THE ROME AND CARROLLTON CONSTRUCTION COMPANY *et al.* *v.* JENNINGS; and the same *v.* PRICE.

A railroad company which has condemned and paid for land for its right of way, is liable in damages to the tenants of the prior owner, for injuries to their crops by invading cattle which were allowed

entrance by the right of way condemned; the crops having been protected by stock-gaps before the condemnation, and these stock-gaps having been filled up by the company afterwards.

(a) Though the true measure of damages may not have been given in charge, no new trial is required if the verdict does not exceed the amount of damages which should have been found had the charge been correct.

May 7, 1890.

Railroads.    Damages.    Before Judge MEYERHARDT. City court of Floyd county.    September term, 1889.

The Chattanooga, Rome and Columbus Railroad Company proceeded under its charter to condemn for its right of way a strip of land sixty-six feet wide through the premises of one McLendon, and on April 25, 1888, the jury summoned to assess the damages found for McLendon $450 for all damages and the right of way; and this sum was paid to McLendon. He had previously rented the land through which the right of way so taken ran, to one Jennings, who went into possession about two weeks before Christmas, 1887, and began work about the next February, preparing the land for cultivation and planting his crops.    The right of way occupied about three acres which he had planted in corn and cotton.    About March 1st, the company put up a stock-gap next to the right of way, but took it away about the 1st of April; it would have been sufficient to protect the adjoining land from the depredations of stock.    The company caused another to be put up about the 10th of August, but removed it in a few days.    When the first one was put in, Jennings' corn was about two feet high and was protected by a fence; but after it was removed, cattle and hogs entered the premises and destroyed portions of the crops, causing a loss to him of over $200.    He never received anything for what was destroyed or for what was taken by the company.    He applied to the section-boss of the railroad company and asked him to put in

a stock-gap, but he said he had orders to take out the stock-gap and could not put it back without orders; and he never did. It would have required about two miles of fence to have protected Jennings' crops. He guarded it day and night with the assistance of a boy whom he had employed for that purpose He brought suit for $400 damages on November 28, 1888, and recovered a verdict for $133.10.

There was testimony that the jury which assessed the damages for the right of way did not take into consideration any damage to crops; that the railroad company's counsel urged before them that the stock-gap which was already there would lessen the damages, and the jury made their verdict upon the understanding that the gap was to remain; that the agent of the railroad company said they had built stock-gaps everywhere and there would be no trouble about this one; that McLendon, after it was taken away, offered the company $25 to put it back, which was declined; that it would cost about $200 or more to build a fence to protect the land, etc.; but on some of these points there is conflict in the evidence. The verdict in Price's favor was for $97. Upon the rendition of these verdicts the defendants moved for a new trial in each case, and the same having been refused, exceptions were taken.

Dabney & Fouché, for plaintiffs in error.

J. Branham and C. A. Thornwell, *contra.*

Blandford, Justice.

These two cases stand upon the same footing, the facts in each being the same.

It is contended on the part of the plaintiffs in error that inasmuch as the right of way of the railroad company had been condemned as the property of McLendon, and all damages to the property had been paid for, the company was not liable to these two defendants in

error for damages to their crops by reason of cattle having gotten in by the tearing down of the fences which enclosed the crops, inasmuch as the defendants in error were the tenants of McLendon, and they should look to him alone for any damages they may have suffered. But it appears from the evidence in the record that the crops of those two defendants in error were protected by stock-gaps which had been made by the plaintiffs in error previous to the condemnation of this property, and that after the condemnation of the property the stock-gaps were filled up by the company, in consequence of which cattle went through and destroyed the crops of defendants in error.

We think, under these circumstances, the company was liable for damages which the plaintiffs in error sustained by reason of its act in filling up the stock-gaps. And while the true measure of damages may not have been correctly laid down by the court, yet the verdict of the jury does not exceed the true amount of the damages which should have been found by the jury had the correct rule been laid down by the court.

And the judgment is affirmed in both cases.