## 61679. SIMPSON v. GEORGIA STATE BANK.

McMURRAY, Presiding Judge.

For the purposes of consideration of this case on review, the following facts are admitted to be true:

On July 17, 1978, Heyward V. Simpson signed a note with the Georgia State Bank of Rome. On February 5, 1979, Mrs. Elizabeth Baskin Simpson, mother of Heyward V. Simpson and Edward B. Simpson, was over 88 years of age, suffering from failing eyesight due to cataracts, and did not have the ability or capacity to read fine print. As she was unable to handle her financial affairs, Heyward V. Simpson advised Charles L. White, president of the Georgia State Bank of Rome, of his mother's advanced age and inability to handle her own financial affairs. At that time an account was opened with the Georgia State Bank in order that Heyward V. Simpson and his brother could place their mother's money in the bank so as to set up an account to handle their mother's affairs without having to repeatedly disturb their mother. White was so advised of the purpose of placing the money in the Georgia State Bank and he in turn advised Simpson that their signatures were required on . a "Depositors' Contract" in order to allow Simpson to handle the affairs of his aged mother. Mrs. Simpson was not present during any

of the above described conversations. A joint "Depositors' Contract" with the Georgia State Bank of Rome was made as an "or" account payable to any one of the three. The contract referred to the type of account as "Certificates" and among other things provided for the right of survivorship, and the bank was authorized "to apply this account toward the payment of any indebtedness due this bank from the depositor or depositors, or either of them whether the debt is several and this account is joint, or the debt is joint and the account is several." All the monies deposited in this savings account were the sole property of Elizabeth Baskin Simpson. The depositors' contract was then submitted to Mrs. Simpson by her son, Heyward V. Simpson, for her to sign. The document was not read to her nor was the nature of the document explained to her and due to her advanced age and failing eyesight she was not able to read any of the provisions of the contract herself.

On or about February 15, 1980, the savings certificate contained over $30,000. On or about May 13, 1980, there was still at least a $30,000 certificate of deposit in this joint account. On that date the loan to Heyward V. Simpson was in default, having come into default prior to that date. The note he had executed gave the bank a security interest in any money he had on deposit in the bank. On or about May 13, 1980, and subsequent to Heyward V. Simpson's default, the bank set off $23,521 from said joint account and applied those funds toward the payment of Heyward V. Simpson's indebtedness to the bank.

On June 26, 1980, Mrs. Simpson, as plaintiff, filed an action against Georgia State Bank to recover the sum of $23,521 which she alleged was wrongfully applied from her funds and not those of her son Heyward V. Simpson in payment of his indebtedness, alleging that defendant had failed to make any effort to foreclose on machinery and collateral pledged as security for that loan and did so wilfully and maliciously, appropriating the funds from her certificate of deposit. She sought judgment in that amount with interest as well as punitive damages and attorney fees.

Defendant answered, denying the claim, contending it was not liable to the plaintiff in any amount, admitting only jurisdiction, but contending that the plaintiff entered into an agreement with it allowing it to set off against the indebtedness the said sum and that it did not foreclose on any machinery and collateral and that it was at all times acting lawfully and within its rights under the depositors' agreement. It also filed a request for admission that the so-called "Depositors' Contract" showing the signature of the plaintiff thereon was genuine. Plaintiff answered that the printed document attached to the request was a form issued by the defendant and admits that her

signature appears on said document but for the reason set out in the pleadings and affidavit attached she lacked ability or capacity to read the size print contained therein and had no present recollection of anyone explaining or reading the "Depositors' Contract" from the bank to her and that same was of no legal validity.

Defendant also, in addition to its answer, moved to strike certain pleadings and by separate motion to dismiss the complaint for failure to state a claim upon which relief can be granted. Whereupon plaintiff amended her complaint to add Count 2, setting forth that White, as president of Georgia State Bank, knew that the funds deposited in the certificate of deposit were the sole property of the plaintiff, that her son had a business loan outstanding with the Georgia State Bank, and no agent, employee, or official explained to him (Heyward V. Simpson) that his mother's funds being deposited in the certificate would be subject to offset against any amounts owing and due by him on his business loan with the Georgia State Bank. Nor did any agent, employee, or official of the defendant explain to the plaintiff that her funds deposited in this certificate would be subject to offset against amounts due and owed by her son at the Georgia State Bank. The pleading again set forth that due to her cataracts, failing eyesight, and advanced age, she was unable and did not have the capacity to read the contract nor did any agent, employee, or official of the defendant make any effort to explain the contract to her and at no time did her son or anyone else explain the nature of the document to her. Plaintiff further alleged that the bank had no statutory right to set off the certificate of deposit against the indebtedness owed by her son since all the funds in the certificate were contributed by and for her and that the bank wilfully and maliciously appropriated the funds as an offset against amount due on the secured loan of her son. She therefore demanded return of the $23,521 wrongfully applied, but no payment has been forthcoming.

In Count 3 plaintiff further alleged that she was 88 years of age, confined to a nursing home, in addition to the above facts with reference to her cataracts and failing eyesight and again sought the return of the sum wrongfully applied, allegedly to be wilfully and maliciously appropriated. She again prayed for the return of her monies with interest, punitive damages and attorney fees.

The defendant answered the amendment to the complaint denying the claim and contending that at all times it acted lawfully and within its rights under the "Depositors' Contract."

The cause came on regularly to be heard before the trial court pursuant to the motion to dismiss. Both parties submitted matters outside the pleadings (the facts set forth above) which the court considered and treated the motion as one for summary judgment.

Based upon the entire record and admissions, the court held there was no genuine issue as to any material fact and granted judgment as a matter of law to the defendant. Plaintiff appeals. *Held:*

1. If a party to a multiple party account is indebted to a financial institution, the financial institution has the right to setoff against the account in which the party has a right of withdrawal. The amount of the account subject to setoff is "that proportion to which the debtor is . . . beneficially entitled, and in the absence of proof of net contributions, to an equal share with all parties having present rights of withdrawal." Code Ann. § 41A-3812 (Ga. L. 1976, pp. 1388, 1390). Under the pleadings and facts shown in the case sub judice all of the funds are those of the plaintiff, and her debtor son was not "beneficially entitled." Under the facts shown above, the bank's agent well knew this, although he expressly denies same with reference to the consideration of the motion for summary judgment. However, the right to setoff as shown in Code Ann. § 41A-3812, supra, is also "subject to any contractual provision," and the contract here by and between the parties authorized the bank "to apply this account toward the payment of any indebtedness due this bank from the depositor or depositors or either of them where the debt is several and this account is joint." Counsel for the defendant argues that the plaintiff could have opened an individual custodial account in her name with both of her sons as custodians but that this she failed to do. Under the above set of circumstances, even though the debtor (Heyward V. Simpson) was not beneficially entitled to any of the funds, the financial institution (defendant) had a right of set off under the contractual provisions shown above. See *Greene v. C. & S. Bank,* 134 Ga. App. 73 (3), 76 (213 SE2d 175).

2. The general rule in this state is that when one who can read signs a contract without reading it he is bound by the terms thereof, "unless he can show that an emergency existed at the time of signing that would excuse his failure to read it, or that the opposite party misled him by an artifice or device which prevented him from reading it, or that a fiduciary or confidential relationship existed between the parties upon which he relied in not reading the contract." *Cochran v. Murrah,* 235 Ga. 304, 305 (219 SE2d 421). See also *Morrison v. Roberts,* 195 Ga. 45 (23 SE2d 164).

3. We note that the plaintiff's complaint sets forth no allegations of fraud. Averments of fraud must be stated with particularity. Code Ann. § 81A-109 (b) (Ga. L. 1966, pp. 609, 620). Plaintiff's complaint fails to allege with particularity the elements of an action for fraud set forth in such cases as *Martin Burks Chevrolet v. McMichen,* 136 Ga. App. 845, 847 (222 SE2d 633), and *Minter v. Powell,* 152 Ga. App. 449, 451 (1) (263 SE2d 235).

4. Here the plaintiff was unable to read the contract to all intents and purposes with reference to the fine print due to her age, cataracts and failing eyesight. There existed a fiduciary or confidential relationship with her sons, in particular with the son who owed the bank and who obtained her signature on the contract. But we are concerned here as to whether the defendant bank had an obligation to treat plaintiff in any other way than at arms' length. See *Feltman v. National Bank of Ga.,* 146 Ga. App. 434, 438 (3) (246 SE2d 447); *Robertson v. Panlos,* 208 Ga. 116, 120 (65 SE2d 400). Only if the son were acting for the benefit of the bank in obtaining her signature on the contract could the confidential relationship by and between the mother and son reflect upon the alleged principal, in this instance the defendant bank. Of course, the son was acting as her agent in setting up the account. However, the defendant as the opposite party was dealing at arms' length with the plaintiff in entering the contract, and we do not find that the confidential relationship between the mother and son reflected back upon the bank which presented the signature card, containing the contract, to the son to obtain his mother's signature.

*Judgment affirmed. Quillian, C. J., Shulman, P. J., Banke, Birdsong and Carley, JJ., concur. Deen, P. J., Sognier and Pope, JJ., dissent.*

DECIDED JUNE 22, 1981 —
REHEARING DENIED JULY 16, 1981.

*Wright W. Smith,* for appellant.
*Robert N. Farrar,* for appellee.

POPE, Judge, dissenting.
The affidavit of Heyward V. Simpson states that because of his mother's advanced age, she was unable to handle her financial affairs. He and his brother were placing her funds in the bank in order that they could handle her affairs.

The Georgia State Bank advised Heyward Simpson that his signature, his brother's signature and the signature of his mother would be required on a "Depositors' Contract." This contract authorized the bank to apply the funds of the mother toward a debt owed the bank by the son, Heyward Simpson, and the bank did so.

The 88-year-old mother, unable to read the "Depositors' Contract" and never intending for her life savings to be used to pay her son's debt to the bank, was misled in signing the "contract" and therefore is not bound thereby under *Pirkle v. Gurr,* 218 Ga. 424 (128 SE2d 490) (1962) and *Grimsley v. Singletary,* 133 Ga. 56 (65 SE 92)

(1909).

Mrs. Simpson never intended to guarantee the payment of her son's debt to the bank. The bank had to know that the son's signature on the contract would subject his mother's money to repay the pre-existing loan of the bank to the son. Failure of the bank to disclose this to Mrs. Simpson would, in my opinion, constitute at least constructive fraud and therefore present a question of fact for the jury.

I respectfully dissent. I am authorized to state that Presiding Judge Deen and Judge Sognier join in this dissent.