## 64518. GLENNVILLE HATCHERY, INC. v. THOMPSON.

POPE, Judge.

As appellant Glennville Hatchery, Inc. states in the introduction to its brief, "This is the case of the frustrated chicken grower." Appellant initiated this action, seeking the return of approximately 9,193 chickens from appellee Derrell Thompson or, in the alternative, damages. Appellee admitted having possession of the chickens and counterclaimed for damages based on "misrepresentation and fraudulent and deceitful conduct" and breach of contract. Appellant amended its complaint to include a demand for additional damages allegedly flowing from appellee's negligence in caring for the chickens and also the decrease in the market value of the chickens. Following three days of testimony, a jury returned a verdict of $75,000.00 in favor of appellee. Appellant's motion for judgment n.o.v., or in the alternative for new trial, was denied. Appellant brings this appeal enumerating a multitude of errors.

The parties herein entered into an agreement by which appellant agreed to provide a number of breeder chickens to appellee and the feed, medication and sanitation products to develop a breeder flock. Appellee agreed to furnish the building, equipment, labor, etc. for the proper care and growing of the chickens. Appellee received compensation based on the number of eggs produced and the hatchability of those eggs. Bonus compensation based on the number of chicks produced per hen and upon the amount of feed used per dozen hatching eggs was also available. Beyond these general parameters the evidence of record relating to the agreement between the parties was in considerable dispute. In several enumerations of error appellant challenges the sufficiency of the evidence to support the verdict. The errors enumerated include the grant and/or denial of several motions for directed verdict plus the denial of appellant's motions for judgment n.o.v. and for new trial. The issues raised by these enumerations will be dealt with below, but the standard

utilized in the discussion of each will be the "any evidence" test. That is, the evidence will be construed to uphold rather than to upset the verdict. *Speir v. Williams,* 146 Ga. App. 880 (1) (247 SE2d 549) (1978); *Short v. Riles,* 144 Ga. App. 463 (4) (241 SE2d 580) (1978).

1. Appellant's first enumeration cites as error the trial court's denial of its motion for directed verdict on the ground that appellant was entitled to a judgment in its favor "as a matter of law." Appellant argues that the terms of the written contract executed by the parties precluded any recovery by appellee. This written contract was entered into after appellee had begun construction of his "chicken house," but before it had been completed, and before the first batch of chickens had been delivered to him. The evidence also discloses the existence of one or more oral agreements pre-dating and/or post-dating this written contract. Appellant initiated this lawsuit after appellee had refused to surrender upon demand the second batch of chickens. The evidence conflicted as to whether the written contract covered the second batch of chickens. However, even if the written contract were applicable to the second batch of chickens, said contract did not bar appellee's counterclaim.

Appellant cites two separate provisions of the written contract in support of its argument. The first is the understanding between the parties "That upon termination of the Agreement for breach of the condition mentioned herein, [appellee] does hereby fully release [appellant] . . . from any claims or liability of any character whatsoever." We find nothing in the circumstances in this case which would have precluded appellee from waiving his rights under the contract. See *Young v. John Deere Plow Co.,* 102 Ga. App. 132 (1) (115 SE2d 770) (1960). However, nowhere in the contract was the "condition," the breach of which would trigger the waiver, specifically mentioned or defined. In any event, there was ample evidence that appellant, rather than appellee, had breached the contract. Thus, this provision of the contract did not bar appellee's recovery on his counterclaim.

Secondly, the contract provided: "This agreement, and the attached schedule, are separate from any other agreement made or to be made between the parties and represent the complete contract. Any variations from the terms hereof must be authorized by further written agreement signed by both parties hereto." Appellant argues that this provision precluded any other agreement not in writing and signed by both parties. To the contrary, however, this provision clearly recognized the possibility of other, separate agreements between the parties, notwithstanding the language that the written contract plus compensation schedule represented "the complete contract." Compare *Touche, Inc. v. Dearborn,* 161 Ga. App. 188 (3)

(291 SE2d 35) (1982). Therefore, this provision also did not bar appellee's recovery.

2. Appellant's Enumerations No. 2 and 7 cite as error two adverse rulings by the trial court relating to Count I of appellee's counterclaim. The first of these rulings was the trial court's denial of appellant's motion to dismiss Count I of the counterclaim for failure to plead fraud and deceit with sufficient specificity. This motion was made and denied immediately preceding the trial of the case. "The proper remedy for seeking more particularity is by motion for a more definite statement (Code Ann. § 81A-112 (e) [now OCGA § 9-11-12(e)]) at the pleading stage or by the rules of discovery thereafter." *Cochran v. McCollum,* 233 Ga. 104, 105 (210 SE2d 13) (1974). Thus, the trial court did not err in denying appellant's motion to dismiss. *Lawyers Co-operative Pub. Co. v. Huff,* 142 Ga. App. 45 (2) (234 SE2d 842) (1977). See also *Eubanks v. Davis,* 160 Ga. App. 250 (286 SE2d 743) (1981).

Appellant also contends that the trial court erred in denying its motion for directed verdict on the ground that there was insufficient proof of fraud, deceit or misrepresentation. Although appellee utilizes the words "fraud," "deceit" and "misrepresentation," Count I of the counterclaim fell short of setting forth with sufficient particularity a cause of action for fraud. See generally *Simpson v. Ga. State Bank,* 159 Ga. App. 310 (3) (283 SE2d 278) (1981); 12 EGL Fraud and Deceit, § 13 (1977 Rev.). Despite the unfortunate use of these words, however, Count I did set forth a claim for breach of contract such as would sufficiently apprise appellant of the nature of the claim so that appellant could defend against it. See *Thomas v. Ronald A. Edwards Const. Co.,* 163 Ga. App. 202 (1) (293 SE2d 383) (1982). There was evidence of record to support appellee's allegations of an oral agreement between him and appellant by which he would construct a chicken house to appellant's specifications in return for a continuing supply of chickens from appellant so that he could recoup his investment and make a profit. There was also evidence that appellant breached this agreement by insisting upon additional expenditures for plant and equipment which appellee was financially unable to meet, which in turn resulted in appellant's early confiscation of appellee's flock and the cessation of relations between the parties. Because fraud was not in issue in this case, and because there was evidence to support appellee's claim for breach of contract, the trial court did not err in denying appellant's motion for directed verdict as to Count I of the counterclaim.

3. Enumerations No. 3 and 8 challenge Count II of the counterclaim relating to lost profits. Count II alleged damages in the amount of $15,000.00 for profits lost as the result of bad feed provided

by appellant to appellee. Appellant first argues that the issue of lost profits should not have been in the case at all because the relationship between the parties was that of bailor and bailee. Thus, appellant continues, title to the chickens remained in it as bailor and appellee had no rights therein. This argument is entirely specious. The written contract between the parties clearly provided that appellant received compensation based upon the number of eggs produced and their hatchability. Appellant was responsible for providing the feed for the chickens. There is a patent correlation between the feed given the chickens and the number of eggs produced; i.e., if the feed given to the chickens makes them sick or kills them, the number of eggs produced by the flock will decline. Thus, the trial court did not err in denying appellant's motion to dismiss Count II of the counterclaim.

Appellant also enumerates as error the trial court's denial of its motion for directed verdict on the issue of lost profits. The gravamen of this enumeration is appellant's contention that appellee did not prove his damages in this regard with sufficient specificity. Appellee in his counterclaim alleged $15,000.00 in lost profits on the subject flock of chickens in 1979. At trial appellee testified as to his profit (revenue less named expenses) from his first flock of chickens in 1978; his profit was approximately $11,700.00. By comparison to the 1978 flock his production in 1979 was about the same, but his hatchability was superior until the introduction of the allegedly bad feed. His 1979 flock was larger than his 1978 flock, and he estimated his lost profits for 1979 to be approximately $8,000.00; he had already received some revenue from the 1979 flock.

"Lost profits are recoverable as damages if such are shown with reasonable certainty." *DeVane v. Smith,* 154 Ga. App. 442, 443 (268 SE2d 711) (1980). Even though appellee did not show $15,000.00 in lost profits, his testimony in the case at bar provided evidence estimating with reasonable certainty the net profit he would have made had appellant not breached the written contract by delivering bad feed. Thus, it was not error to deny appellant's motion for directed verdict on this ground. *Mizell v. Spires,* 146 Ga. App. 330 (1) (246 SE2d 385) (1978); *Appling Motors, Inc. v. Todd,* 143 Ga. App. 644 (2b) (239 SE2d 537) (1977); see *Bass v. Carpenter,* 152 Ga. App. 298 (1) (262 SE2d 578) (1979). Cf. *DeJong v. Stern,* 162 Ga. App. 529 (1) (292 SE2d 115) (1982).

4. Enumeration No. 4 cites as error the trial court's grant of appellee's motion for directed verdict on a portion of appellant's claim for consequential damages. For a period of time in 1979 appellee refused to release his flock of chickens to appellant on demand. Appellant contends that it was therefore required to purchase 350 cases of hens on the open market in order to fulfill its

contractual commitments with others. This purchase, appellant argues, resulted in the loss of $5,187.00.

"Damages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from such breach, and such as the parties contemplated, when the contract was made, as the probable result of its breach." Code Ann. § 20-1407 (now OCGA § 13-6-2). The written contract provided that appellant was entitled to possession of the chickens on demand. However, the evidence in this case showed that the parties contemplated that appellee would have possession of the second flock of chickens for a set period of time and that appellant made its demand for possession of these chickens well before the end of that period. There was no evidence that appellee was aware, at the time appellant made its demand for possession, that appellant had contracted to sell his second flock of chickens to a third party. See *Carolina Portland Cement Co. v. Roper-Strauss-Ferst Co.,* 33 Ga. App. 511 (3) (126 SE 860) (1925). Also, there was no evidence that damages such as these sought by appellant were within the contemplation of the parties at the time the contract was made, nor were these damages such as could have been reasonably anticipated at that time. See *Western Union Tel. Co. v. Tyre,* 58 Ga. App. 34 (197 SE 503) (1938); *Fain v. Wilkerson,* 22 Ga. App. 193 (3) (95 SE 752) (1918). Therefore, the trial court did not err in granting appellee's motion for directed verdict as to this issue.

5. The issue raised in Enumerations No. 5 and 6 (denial of appellant's motions for judgment n.o.v. and new trial) are essentially duplicative of those discussed in the preceding divisions of this opinion. However, the issue of the amount of damages awarded appellee requires further discussion. Although the parties stipulated appellee's investment in his chicken house to be between $60,000.00 and $65,000.00, appellee in Count I of his counterclaim sought to recover no more than $60,000.00 in damages therefor, the excess apparently the salvage value of the building. Therefore, appellee could not recover more than $60,000.00 in damages on Count I. See *First Bank &c. Co. v. Ins. Service Assn.,* 154 Ga. App. 697 (4) (269 SE2d 527) (1980). Appellee testified that his chicken house as constructed was not suitable for any other use. He also testified that his lost profits on the second flock of chickens amounted to $8,000.00. Appellee did not plead any other damages, nor did he offer any testimony as to lost profits for future years. Thus, the evidence of record authorized a recovery by appellee of no more than $68,000.00.

"Verdicts fall into two classes — where the amount thereof, in the event of liability, is a matter of arithmetical calculation and the plaintiff is willing to write off the excess, the verdict should be allow-

ed to stand; on the other hand, in cases involving the value of a life, pain and suffering, or other items not subject to mathematical calculation but peculiarly for the determination of the jury, the excess cannot be mathematically calculated and consequently cannot be written off. *Seaboard Air-Line R. v. Bishop,* 132 Ga. 71 (63 SE 1103) [1909]. Here the verdict is one of simple arithmetical calculation." *Plymouth Record Corp. v. Books, Inc.,* 92 Ga. App. 753, 758 (90 SE2d 336) (1955). Accordingly, appellee must write off the sum of $7,000.00 from his recovery, otherwise the judgment is reversed. *Southern R. Co. v. Groover,* 41 Ga. App. 746 (6) (154 SE 706) (1930); see *Bugg v. Harper,* 36 Ga. App. 39 (135 SE 109) (1926).

6. After both parties had announced the names of the witnesses they intended to call at trial, appellant, claiming "surprise," moved to exclude the testimony of approximately eight of appellee's witnesses on the ground that these names had not been provided in response to discovery. In the alternative appellant moved for a continuance so that it could have sufficient time to interrogate these witnesses. The basis of this motion was a question asked of appellee during a deposition which requested the names of those who had first-hand knowledge of the dispute between appellee and appellant. The trial court took the motion under advisement, but later denied the motion upon appellant's renewal thereof when appellee called one of the subject witnesses. The record discloses that only one of the witnesses complained of actually testified at trial. This witness was a former employee of appellant; he had worked for appellant for more than 16 years. This witness had no first-hand knowledge of the transaction between the parties in this case; rather, his testimony was to the effect that appellant generally assured its growers that as long as they performed satisfactorily, appellant would continue to provide them with chickens. He also testified that appellant assisted its growers in obtaining adequate financing.

The Civil Practice Act (CPA) provides: "A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows: (1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to (A) the identity and location of persons having knowledge of discoverable matters. . . ." Code Ann. § 81A-126(e) (now OCGA § 9-11-26(e)). This section of the CPA applies to oral depositions as well as written forms of discovery. " 'The broad purpose behind the deposition and discovery rules was to take the sporting element out of litigation . . . The sporting theory of litigation thrives on surprise — including surprise witnesses. Elimination of this sort of tactics is a legitimate purpose of the

discovery rules. . . .' [Cit.] Thus, where the complaining party cannot legitimately claim surprise, either because he knew of the existence of the witness or had equal means of knowing, it is not error to fail to invoke the sanctions of postponement, mistrial, barring the witness, etc. [Cits.]" *Kamensky v. Stacey,* 134 Ga. App. 530, 532 (215 SE2d 294) (1975). Also, discovery questions should be sufficiently specific to require specific responses, and in so responding the party to whom they are directed is required to go no further than is required in responding fully to the questions asked. *Nathan v. Duncan,* 113 Ga. App. 630, 640 (149 SE2d 383) (1966). Appellant requested only the names of those with first-hand knowledge of the dealings between it and appellee. This witness offered no such testimony. Further, it would appear that, because this witness was a former employee, appellant had equal means of discovering him. See *Sackett v. L. L. Minor Co.,* 244 Ga. 375 (1) (260 SE2d 37) (1979). In any event, this witness' testimony was merely cumulative of other testimony adduced at trial. See *Hanna Creative Enterprises, Inc. v. Alterman Foods, Inc.,* 156 Ga. App. 376 (2) (274 SE2d 761) (1980), for the proposition that the admission of surprise evidence must have been of a "critical" nature in order to require a new trial. Therefore, even if the trial court abused its discretion in allowing this witness to testify, such error was harmless under the facts in this case.

7. Appellant notes that the trial court granted its motion to dismiss appellee's claim for exemplary damages. However, Enumeration No. 10 cites as error both the trial court's failure to so instruct the jury and also allowing the pleadings to go to the jury room without this claim having been stricken. The record discloses no objection to the pleadings going out with the jury. Also, appellant made neither a written request to charge the jury as to this matter nor any objection after the charge that such an instruction had been omitted. See *Saxon v. Toland,* 114 Ga. App. 805 (1) (152 SE2d 702) (1966). The trial court did not submit the issue of exemplary damages to the jury. Although the better practice would have been to affirmatively instruct the jury that this issue in the pleadings had been removed from their consideration, there is no indication in this case that appellant was harmed by the court's failure to do so. See *Mathews v. Penley,* 242 Ga. 192 (2) (249 SE2d 552) (1978).

8. Enumeration No. 12 cites as error the trial court's overruling appellant's objection to the following question: "Does your contract provide for you to be able to call upon a producer if there's missing chickens that you don't even know what happened to?" Appellant objected to this question on the ground that the contract itself was the highest and best evidence of is contents. The written contract in this case was not only available, but already introduced into evidence.

"The best evidence rule is always applicable where the contents of a writing are in issue." *Ferrell v. State,* 149 Ga. App. 405, 408 (254 SE2d 404) (1979). Therefore, the trial court should have sustained appellant's objection to the question as worded. This error, however, was harmless. Although appellee's question, as worded, sought information as to the contents of the contract, the answer given by the witness was unresponsive. The witness answered, "Since I've been here the hen flocks that we've sold our count's been usually over instead of short." Moreover, it appears from this portion of the transcript that appellee's line of inquiry was to issues other than the contents of the contract, and appellee addressed no other questions relating to said contents.

9. In Enumerations No. 13 and 14 appellant asserts as error the trial court's allowing certain "comparison" testimony into evidence. Appellant argues that such testimony — principally comparing appellee's operation with other, similar operations in the vicinity and also relating to appellant's dealing with other growers — was inadmissible as irrelevant. We disagree. Two of the issues hotly disputed in this case were whether appellee had breached his contract with appellant by improperly maintaining his chicken house and also whether an oral contract existed between the parties. Since the testimony objected to in these enumerations related either directly or indirectly to issues being tried by the jury, it was properly admitted. Code Ann. § 38-201 (now OCGA § 24-2-1).

10. Enumerations No. 11 and 19 are not argued and are therefore deemed abandoned. Court of Appeals Rule 15(c)(2) (Code Ann. § 24-3615(c)(2)).

11. The remaining enumerations all relate to the trial court's charge to the jury. Enumeration No. 15 challenges the propriety of the court's charge on the issues of lost profits and fair market value. However, since no objection was raised at trial to the charge on lost profits and the error asserted in this regard was not harmful as a matter of law (see Code Ann. § 70-207 (a) and (c) (now OCGA § 5-5-24 (a) and (c)), we will confine our discussion here to the court's charge on fair market value.

Appellant objected at trial to the charge on fair market value as incomplete, as not defining "fair market value" and as not relating who had the burden of proof. We note at the outset that appellant made no written request to charge as to fair market value. Also, the parties stipulated that appellee's investment in his chicken house was between $60,000.00 and $65,000.00. The thrust of appellee's testimony was that as a result of appellant's breach of contract his chicken house was worthless except for scrap. The jury agreed and awarded him the full value of his lost investment as damages. See

Division 5, supra. "Though the true measure of damages may not have been given in charge, no new trial is required if the verdict does not exceed the amount of damages which should have been found had the charge been correct." *Rome & Carrollton Constr. Co. v. Jennings,* 85 Ga. 444, 445 (11 SE 839) (1890); *Southern Concrete &c. Co. v. Martin,* 126 Ga. App. 534, 537-8 (191 SE2d 314) (1972); *Roberts v. McClellan,* 80 Ga. App. 199, 207-8 (55 SE2d 736) (1949).

12. Enumeration No. 16 cites as error the trial court's failure to charge the law on the credibility of witnesses as set forth in the Suggested Pattern Jury Instructions, Volume I: Civil. However, since no written request was made for such a charge and because the trial court did give a charge as to witness credibility, albeit in language different from that in the pattern instructions, this enumeration has no merit. See *Travelers Indem. Co. v. Cumbie,* 128 Ga. App. 723 (5) (197 SE2d 783) (1973).

13. The trial court's charge as to a depository for hire (see Code Ann. § 12-301, now OCGA § 44-12-90) was properly adjusted to the facts in this case. Therefore, Enumeration No. 17 has no merit.

14. Although in dispute, the evidence of record supported the trial court's charge relating to the authority of a general agent to bind his principal. Appellant made no written request for further instructions in this area, and the charge as given was a correct statement of the law. See Code Ann. § 4-301 (now OCGA § 10-6-50). Thus, Enumeration No. 19 is also meritless.

15. Finally, appellant enumerates as error the trial court's failure to give two of its requests to charge. One charge relates to the prejudicial inference which may arise when a party fails to produce a witness who is available to him. The other charge relates to the presumption that a charge or claim against a party is well-founded when such party fails to produce evidence which may repel the claim and which is in his power to produce. Our review of the record in this case discloses no set of facts which would have authorized the giving of either of these requests, nor has appellant cited any such facts. Enumeration No. 20, therefore, is without merit.

The judgment of the trial court is affirmed with direction that appellee write off the sum of $7,000.00 from his recovery within 30 days of the receipt of the remittitur in this case; otherwise the judgment is reversed.

*Judgment affirmed with direction. Deen, P. J., and Sognier, J., concur.*

DECIDED NOVEMBER 30, 1982 —
REHEARING DENIED DECEMBER 16, 1982 — 

*M. Francis Stubbs,* for appellant.
*Glen A. Cheney, Richard D. Phillips,* for appellee.