71721. GEORGIA FARM BUREAU MUTUAL INSURANCE
COMPANY v. SMITH et al.
(346 SE2d 848)

POPE, Judge.

The plaintiffs in this case are two brothers, Mr. James F. Smith and Mr. Thomas F. Smith. They filed suit alleging that defendant Georgia Farm Bureau Mutual Insurance Company (hereinafter Farm Bureau) issued a policy of homeowner's insurance to plaintiff James Smith, providing certain coverage with regard to a house located in McIntosh County which was destroyed by fire on April 20, 1984 and seeking to recover under the policy. Several collateral issues were dis-

posed of during trial, and when the case was submitted to the jury, the only issues remaining for resolution were whether or not James had an insurable interest in the house and thus was entitled to any of the coverage provided under the policy for "loss of use" and for damage to the house itself. The subject insurance policy provided a coverage limit of $30,000 on the house and a limit of $3,000 on loss of use, and James sought to recover up to these policy limits. The jury returned a general verdict in favor of James in the amount of $23,000, and judgment was entered accordingly.

The primary thrust of Farm Bureau's appeal is its contention that James had no insurable interest in the subject property at the time of the fire. "Insurable interest" is defined by statute as an "actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment." OCGA § 33-24-4 (a). Such an interest at the time of the loss is a prerequisite to enforcement of an insurance policy covering property. OCGA § 33-24-4 (b).

There is no dispute in this case about the fact that James obtained clear and complete title to the property at issue in 1972 via a deed from his brother Robert Smith. James was the titleholder to the property as of 1972 and he was the titleholder to the property in 1974 when construction was begun on the house and he was the titleholder when the construction was finished and at all times up through and including April 13, 1983, when he transferred the property by warranty deed to his brother Thomas. James testified that he took out the policy of insurance at issue in this case in March of 1983 and that at that time he was the record titleholder of the property. Within a month or so after James applied for and took out the policy of insurance, he deeded the property to his brother Thomas, though James continued to pay the premiums on the policy through the time of the fire. The policy was renewed in James' name in March of 1984, approximately one month before the fire, and at no time between the time when the policy was first taken out in March of 1983 and the time of the fire in April of 1984, did either James or Thomas ever inform Farm Bureau or any of its agents or employees about the change of ownership of the property.

Plaintiffs base their case for recovery under the subject insurance policy upon the theory that James had an insurable interest in the property because the property was impressed with an implied trust in his favor, notwithstanding the warranty deed transferring title from James to Thomas. In support of this theory plaintiffs testified that they jointly purchased the subject property from their brother Robert in 1972. The deed was made only in the name of James because Thomas was "having trouble with [his] wife back then." In 1974 each plaintiff expended approximately $20,000 in time and labor in con-

structing a house on the property. It was agreed that James would live in the house during his lifetime upon payment of the taxes and insurance. Thomas' ex-wife and her children also resided in the house from the time of its completion in 1977 until the subject fire which destroyed it. In April 1983 James deeded the property to Thomas because he (James) felt he was going to die and wanted everything settled. Thomas testified that James "had to go to Jacksonville about his heart and stuff like that. He was having trouble. He was falling a lot. So I didn't want a lot of trouble with my mama and them . . . 'cause he hadn't never been married, and I didn't want them to come back here and try to take the house. . . . So . . . he just put it back over in my name." No consideration was actually paid by Thomas to James, although the deed recited consideration as ten dollars. The agreement relating to James residing in the house remained the same, and Thomas continued to recognize James' interest in the property.

1. Farm Bureau's first three enumerations of error challenge plaintiffs' theory of implied trust. " 'A trust is an equitable obligation, either express or implied, resting upon a person by reason of a confidence reposed in him, to apply or deal with property for the benefit of some other person, or for the benefit of himself and another or others, according to such confidence.' " *Smith v. Francis*, 221 Ga. 260, 267 (144 SE2d 439) (1965); see OCGA §§ 53-12-20 and 21. "Implied trusts are those trusts which are inferred by law from the nature of the transaction or the conduct of the parties." OCGA § 53-12-22. "A trust is implied: (1) Whenever the legal title is in one person but the beneficial interest, either from the payment of the purchase money or from other circumstances, is either wholly or partially in another . . . ." OCGA § 53-12-26. Clearly, the jury in this case was authorized to find that an implied trust resulted in favor of Thomas when plaintiffs jointly purchased the subject property from their brother in 1972 but the deed transferring title named only James as the grantee. See, e.g., *McCollum v. McCollum*, 202 Ga. 406 (1) (43 SE2d 663) (1947); *Hudson v. Evans*, 198 Ga. 775 (2) (32 SE2d 793) (1945). In our view, the jury was likewise authorized to find that when James transferred title to the property to Thomas in 1983 an implied trust resulted in favor of James. " 'A deed absolute in form may be shown by parol evidence to have been made in trust for the benefit of the grantor, where the maker remains in possession of the land.' " *Harper v. Harper*, 199 Ga. 26, 29 (33 SE2d 154) (1945), citing *Chandler v. Ga. Chem. Works*, 182 Ga. 419 (1) (185 SE 787) (1936). See *Conner v. Conner*, 250 Ga. 27 (1) (295 SE2d 739) (1982), and cits.; OCGA § 53-12-34. Furthermore, there is neither assertion nor evidence that the 1983 deed from James to Thomas was a gift.

Farm Bureau relies heavily upon the case of *Murrah v. First Nat. Bank*, 225 Ga. 613 (1) (170 SE2d 399) (1969), in support of its asser-

tion that James totally divested himself of any insurable interest he had in the property by deeding same to Thomas. We find the holding in *Murrah* to be factually distinguishable from the case at bar. In that case Murrah acquired legal title in an undivided one-half interest in certain property of which he later divested himself by warranty deed to his co-owner pursuant to the terms of a written agreement. In analyzing the agreement, the court found that since any subsequent sale of the property was within the discretion of the co-owner, "there was no implied trust in the property for the benefit of [Murrah], but only a contractual right to receive his interest in any profit made in the event of a sale." Id. at 616. There is no evidence in the case at bar which could support a finding that, following the warranty deed to Thomas, James had a mere "contractual" right. Rather, as noted above, the evidence here was sufficient to establish that the deed from James to Thomas was impressed with an implied trust in favor of James to the extent of his interest in the property. The case of *Roach v. Ga. Farm Bur. Mut. Ins. Co.*, 173 Ga. App. 229 (325 SE2d 797) (1984), is likewise distinguishable from the case at bar, for there was no evidence in that case to show that the grantor retained any interest whatsoever in the property transferred.

It follows from the foregoing discussion that James had an insurable interest in the house at the time of its destruction by fire, even though the property was no longer titled in his name. Accord *Hurley v. Natl.-Ben Franklin Fire Ins. Co.*, 46 Ga. App. 515 (1) (167 SE 917) (1933). "Title is not the sole test for determining an insurable interest. It is sufficient if the insured holds such a relation to the property that its destruction by fire would result in pecuniary loss to him. The test of insurable interest in property is whether the insured has such a right, title, or interest therein, or relation thereto, that he will be benefited by its preservation and continued existence, or suffer a direct pecuniary loss from its destruction or injury by the peril insured against." (Citations and punctuation omitted.) *Allstate Ins. Co. v. Thompson*, 164 Ga. App. 508, 509 (297 SE2d 520) (1982). See *Pike v. American Alliance Ins. Co.*, 160 Ga. 755, 760-61 (129 SE 53) (1925). Therefore, the trial court did not err in denying Farm Bureau's motions for directed verdict, j.n.o.v., or new trial on the issues of implied trust and insurable interest. Nor did the court err in charging the jury as to implied trust, as the evidence was sufficient to support the charge. See generally *Brown v. Matthews*, 79 Ga. 1 (2) (4 SE 13) (1887). Also, although Farm Bureau cites some evidence of record by which the jury could have found that James' interest in the property after his deed to Thomas was that of a mere tenant at will, the evidence patently did not demand such a finding.

2. We agree with Farm Bureau that James failed to show any "necessary increase in living expenses" so as to trigger coverage under

the loss of use provision of the insurance policy. Thus, the trial court erred in denying Farm Bureau's motions for directed verdict and j.n.o.v. in this regard. Although the jury returned a general verdict for $23,000, it is clear from the evidence of record that $20,000 of that amount was awarded for James' interest in the house and that the remaining $3,000 was awarded for loss of use. See generally *Glennville Hatchery v. Thompson*, 164 Ga. App. 819 (5) (298 SE2d 512) (1982). Accordingly, James is directed to strike $3,000 from his recovery, otherwise the judgment is reversed. See *Allstate Ins. Co. v. Baugh*, 173 Ga. App. 615 (4) (327 SE2d 576) (1985).

3. It is clear from our holding in Division 1, supra, that the trial court did not err in allowing parol evidence to establish the implied trust, notwithstanding the warranty deed from James to Thomas. Accord *Freeman v. Saxton*, 240 Ga. 309 (1) (240 SE2d 708) (1977); *Kinsley v. Upshaw*, 156 Ga. App. 513 (274 SE2d 850) (1980).

The judgment of the trial court is affirmed with direction that James F. Smith write off the sum of $3,000 from his recovery within 30 days of the receipt of the remittitur in this case; otherwise the judgment is reversed.

*Judgment affirmed with direction. McMurray, P. J., concurs. Carley, J., concurs in Divisions 1 and 2 and in judgment.*

DECIDED JUNE 4, 1986 —
REHEARING DENIED JUNE 19, 1986 —

*John E. Bumgartner*, for appellant.
*Ivan H. Nathan*, for appellees.