76116. CHEROKEE INSURANCE COMPANY v. GRAVITT.
(369 SE2d 779)

BIRDSONG, Chief Judge.

Cherokee Insurance Company, the defendant below, brings this appeal from the grant of summary judgment to C. Kyle Gravitt, and the denial of its motion for summary judgment. This is the second appearance of this issue before this court. See *Cherokee Ins. Co. v. First Nat. Bank of Dalton*, 181 Ga. App. 146 (351 SE2d 473). The facts were stipulated at trial for consideration of motions for summary judgment submitted by both parties. However, that stipulation is incomplete, it omits the fact that Gravitt sold his shares in Roller Disco to another, and on appeal, the appellant refused to include the

exhibits referred to in, and attached to, the stipulation, i.e., the promissory note and deed to secure debt from the purchaser in the assumption agreement to the seller in the assumption agreement. In 1980, Gravitt purchased land in Rome, Georgia, to construct a roller skating rink and obtained a construction loan from the First National Bank of Dalton in the amount of $300,000, for use in construction of the rink and purchasing equipment for operations. Gravitt executed a promissory note in that amount and a security deed on the property in favor of the bank on September 10, 1980. In July, 1980, Gravitt had formed the Roller Disco Corporation to operate the roller rink business but never transferred ownership of the land or building to Roller Disco.

Although the point is not contained within the stipulated facts, the prior appeal on this issue shows that "[i]n September 1983, Gravitt purportedly sold all the outstanding common stock of Roller Disco to [Edgar Lee] Cagle. . . ." 181 Ga. App. at 146. Cagle signed a promissory note in the amount of $300,000 and a deed to secure debt to Gravitt. However, Gravitt did not execute a warranty deed transferring the property to Cagle, Roller Disco, or any other entity. We must note the omission from the record on appeal of Cagle's promissory note and deed to secure debt, whose contents are crucial to a determination of whether a lien or mortgage was conveyed by Cagle to Gravitt.

On September 2, 1983, Cagle obtained insurance from Cherokee in the amount of $580,000 on the building and $100,000 on the personalty, naming Roller Disco as the insured, First National Bank of Dalton as first mortgagee, and Gravitt as the second mortgagee. On September 16, 1983, Gravitt, individually and d/b/a Roller Disco, the First National Bank and Cagle entered into an assumption agreement concerning the promissory note and security deed from Gravitt to First National. In the assumption agreement, Gravitt was designated as the "seller" and Cagle as the "purchaser," with the bank declared to be the "mortgagee." The stated intent of the agreement was "to sell and convey the whole of the real property described in such deed to secure debt to Purchaser, and Purchaser desires to purchase said real property subject to the deed to secure debt above referred to." Gravitt was paid $2,000 by Cagle, leaving a balance due of $298,000. In the assumption agreement, Gravitt remained obligated to pay the bank the sum of $300,000 he had obtained on September 10, 1980, which was secured by his deed to secure debt on the property he had executed in favor of First National.

Cagle entered into possession of the property and land, and thereafter on October 6, 1983, the building and its contents were burned. On December 20, 1985, Cagle entered a plea of guilty to arson of the building in the United States District Court in Rome. Cherokee

filed a declaratory judgment action against First National, Gravitt and Cagle, as to its liability under its insurance policy on the building. The trial court granted First National's motion for summary judgment in the amount of $226,535.01 and $40,490.80 interest. Cherokee's appeal was decided by this court in favor of First National and the Supreme Court denied certiorari.

Gravitt had originally filed a counterclaim in Cherokee's action, but because all rights had accrued between the parties, a motion to dismiss the declaratory judgment action was granted and Gravitt's counterclaim became the complaint and Cherokee became the defendant. Gravitt amended his complaint and requested judgment on two counts. Count 1 alleged he was the holder of a promissory note in the amount of $300,000 (from Cagle), secured by the property which is the subject matter of the action which was insured by Cherokee, and named Roller Disco as insured and Gravitt as the second mortgagee, that the insured building burned, Cherokee denied liability, and Gravitt contended he was entitled to insurance proceeds up to the amount owed him by Cagle — $298,000. Count 2 alleged First National was the holder of the first deed to secure debt against the insured property and that Gravitt was liable to the bank on a promissory note, and the assumption agreement between the bank, Cagle and himself retained him jointly and severally liable with Cagle on the original note, and Cherokee had denied liability of his indebtedness to the bank in the amount of $226,535.01.

Gravitt moved for partial summary judgment as to three issues: (1) that he had an insurable interest in the insured property, (2) that he was an insured under the policy, and (3) "Defendant[ ] [Cherokee's] proposed counterclaim, as assignee of the First National Bank, against Plaintiff [Gravitt] be dismissed or, in the alternative, summary judgment be granted that any sum due to Defendant, as said assignee, by Plaintiff is insured to the benefit of Plaintiff under the policy. . . ." *Held*:

Appellant contends that appellee cannot be a loss payee as a mortgagee, because he is not a mortgagee. Appellee's retort is that that issue has been determined adversely to appellant in the first appeal of this case. In the former appeal, we found that First National was a mortgagee and because of the insurance policy's inclusion of a "New York standard" clause, which provides that a loss which is payable to a mortgagee, its position shall not be affected by any act or neglect of the mortgagor, the arson by the mortgagor did not void insurance coverage for the loss to the mortgagee. First National and Gravitt were both named as mortgagees in the policy, but in the former appeal it was incorrectly stated that "[a] *deed* and a deed to secure debt on the property were recorded showing Roller Disco as the debtor and Gravitt as the secured party. . . ." (Emphasis supplied.)

181 Ga. App. at 146. Both parties to this appeal have stipulated that Gravitt has never executed a *deed* to Roller Disco, Cagle, or any other entity. Cherokee argues that since Gravitt never executed a deed to Cagle or Roller Disco, Cagle never had title and could not execute a valid security deed to Gravitt, because a non-owner cannot convey what he does not own. See generally, Pindar, Ga. Real Estate Law & Procedure § 21-7. Cherokee claims that if Cagle had no title, he could pass none in this security deed, and "there was no consideration for the promissory note and security deed . . . there was no debt, there was no mortgage, and Appellee is not a mortgagee." We cannot concur with this conclusion.

Appellant has ignored that all parties to the purported sale, Gravitt, Cagle, and First National were fully aware that Gravitt had purchased the property, borrowed $300,000 from First National and executed his promissory note and a security deed to First National. Hence, at the time of the purported sale from Gravitt to Cagle there was in existence a security deed from Gravitt passing title to the property to First National as security for his loan. The assumption agreement recognized this fact as the basis for Gravitt not executing a deed to Cagle, for it clearly shows what was intended and attempted by these parties, i.e., Gravitt was the "seller," Cagle was the "purchaser," and First National was the "mortgagee." The stated intent was "to sell and convey the whole of the real property described in such deed to secure debt to Purchaser, and Purchaser desires to purchase said real property *subject to the deed to secure debt* above referred to [*from Gravitt to First National*]." (Emphasis supplied.) In the assumption agreement, Gravitt remained liable on his original promissory note to First National, which was secured by his security deed to the bank. Thus, Gravitt passed his title to the bank and he had nothing left to pass to Cagle except his equity. See Pindar, supra, § 21-49. The assumption agreement attested to the intent of all parties for Gravitt to sell the property to Cagle and Cagle gave his promissory note to Gravitt and secured it with his security deed. Cagle paid $2,000 to Gravitt and went into possession of the property. Hence, there was consideration on both sides — Cagle paid $2,000 to Gravitt, executed a promissory note and deed to secure debt, and delivered them to Gravitt. Gravitt gave possession of the property and the Roller Disco Corporation to Cagle. First National retained Gravitt's promissory note and security deed on the property. Cherokee recognized these agreements and the insurable interests of Cagle as purchaser of Roller Disco Corporation, and the realty, and the mortgagee's interests represented by the instruments evidencing these debts by Cagle and Gravitt.

Our Code provides that "[n]o particular form is necessary to constitute a mortgage. However, a mortgage must clearly indicate the

creation of a lien and must specify the debt for which it is given and the property upon which it is to take effect." OCGA § 44-14-31. Further, such mortgage "is only security for a debt and passes no title." OCGA § 44-14-30. Decisions of the appellate courts of this state have distinguished between mortgages and deeds to secure debt, pointing out that a deed to secure debt conveys title, while a mortgage is only a lien. *Cole v. Cates*, 110 Ga. App. 820, 823 (140 SE2d 36), citing *Loftis v. Alexander*, 139 Ga. 346, 349 (77 SE 169). Hence, even if the purported deed to secure debt from Cagle to Gravitt was ineffective to pass title, as contended by appellant, it could be effective as a mortgage if it possessed the attributes required by the code. Thus, our appellate courts have held that a purported conveyance of real estate can be a mortgage despite provisions contained therein describing it as a deed (*Camp v. Teal*, 44 Ga. App. 829 (1) (163 SE 233)), and conversely an instrument in the form of a security deed is not a mortgage merely because it recites it was given to secure a described note. *Richey v. First Nat. Bank*, 180 Ga. 751 (3) (180 SE 740).

The so-called "security deed" from Cagle to Gravitt (which appellant contends is ineffective) and the assumption agreement between the bank, Cagle and Gravitt, met the requirements of OCGA § 44-14-31 as to the contents of the mortgage, that is, the creation of a lien, the debt for which it is given, and the property upon which it is to take effect. This code section has dispensed with the formalities of a mortgage in determining its genus. *Hopkins v. West Publishing Co.*, 106 Ga. App. 596, 599 (127 SE2d 849). All parties to the assumption agreement treated Cagle and Gravitt as seller and purchaser and although the promissory note and deed to secure debt from Cagle to Gravitt was not included in the record before us, we must assume that they support the judgment of the trial court in finding that Gravitt "stands in the same position as FIRST NATIONAL (albeit as Second Mortgagee after FIRST NATIONAL)." The court found Gravitt was "the holder of a promissory note (EXHIBIT "F") secured by a security deed on the realty, (EXHIBIT "G") which provides that the debtor [Cagle] shall 'maintain a sufficient amount of fire insurance on building on this property with loss payable to second party to protect the interest of the party of the second part.' " Hence, it is clear that the court had before it sufficient evidence to show the creation of a lien, the debt for which it is given, and the property upon which it is to take effect.

Appellant argues, on motion for rehearing, that we are in error to discuss the "security deed from Gravitt to First National" for "Gravitt is claiming the right to be paid $298,000 in consideration for the transfer of property to Roller Disco that he never made" and that the trial court had previously found for First National "in the principal amount of $226,535.01 . . . that amount has been paid and is no

longer an issue in the case." Counsel ignores his enumerated error that "[t]he trial court erred in granting Appellee Gravitt's Motion for Summary Judgment." The third element of that motion was for judgment on "Defendant's proposed counterclaim, as assignee of the First National Bank, against Plaintiff, be dismissed or, in the alternative, summary judgment be granted that any sum due to Defendant, as said assignee, by Plaintiff is insured to the benefit of Plaintiff under the policy. . . ." Hence, it appears that Cherokee took an assignment from First National when it paid its judgment in the former appeal and raised a "proposed counterclaim" against Gravitt in the present action. Although the issues surrounding the liability of Gravitt to First National on the original note and deed to secure debt may have been determined as between Cherokee and First National on the first appeal of this case, when Cherokee took an assignment from First National and filed a "proposed counterclaim" against Gravitt, it became germane to this appeal and the trial court's grant of summary judgment on this issue. However, appellant did not include in the record on appeal its answer, the alleged "counterclaim," or its assignment from First National. Now that appellant contends this issue should not have been included in our opinion, that element of the grant of summary judgment is considered abandoned.

Further, we find the trial court did not err in finding that Gravitt had an "insurable interest" in the insured property. "[I]nsurable interest" means "any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment." OCGA § 33-24-4 (a). Title is not the only determinative factor, but the insured must have an insurable interest in the property, whether it be "'slight or contingent, legal or equitable.'" *Splish Splash Waterslides v. Cherokee Ins. Co.*, 167 Ga. App. 589, 591 (307 SE2d 107). Gravitt has a "substantial economic interest in the safety or preservation of the insured property," as he remained liable on his promissory note to the bank, and he and Cagle both had a "'slight or contingent, legal or equitable'" interest (*Tomkus v. Parker*, 236 Ga. 478 (1) (224 SE2d 353)) in the insured property which would have been enforceable either in law or equity had the fire not occurred and the debts paid. See *Georgia Farm Bureau Mut. Ins. Co. v. Smith*, 179 Ga. App. 399 (1) (346 SE2d 848); Pindar, supra, § 21-49.

Whether we classify Gravitt as a "mortgagee," or as a party with an equitable interest in the property insured, he was a named mortgagee and had an insurable interest in the property, and Cherokee was required to pay only for the loss it insured to the parties insured. We find no merit to appellant's claim of error in the partial grant of summary judgment to appellee and the denial of appellant's motion.

*Judgment affirmed. Banke, P. J., and Beasley, J., concur.*

DECIDED APRIL 28, 1988 —
REHEARING DENIED MAY 17, 1988 —

*C. King Askew*, for appellant.
*Sam F. Little*, for appellee.