A91A1686. ERIKSSON v. ERIKSSON.
(417 SE2d 165)

COOPER, Judge.

This appeal arises from a probate court order on a petition for settlement of accounts in the estate of John A. Eriksson, Sr. ("deceased") filed by appellee, his daughter. The court, sitting as trier of fact without a jury, made the following findings of fact: In 1975, the deceased and appellant, his son, purchased an apartment building as tenants in common with the deceased contributing 75 percent of the purchase price and appellant contributing 25 percent. A joint venture agreement ("the agreement") executed by the parties to govern their business relationship while operating the apartment building pro-

vided that during the operation of the building, the net profits and losses realized from its operation were to be divided 15 percent to the deceased and 85 percent to appellant. In 1980, the building was sold, and the purchasers executed a promissory note as part of the purchase price. From 1980 through 1983, the deceased received the note payments from the purchasers and used the payments for his living expenses and for payments on the indebtedness to the original seller. In 1983, the note to the original seller was paid in full by the deceased. Thereafter, the deceased continued to receive the note payments; however, after deducting his living expenses, the deceased disbursed 51 percent of the balance of the note payments to appellant and 49 percent to appellee until his death in 1986. Since the deceased's death, appellant has retained the full amount of all note payments received, asserting his entitlement to 85 percent of the net profit from the sale of the building pursuant to the agreement. The trial court held that the joint venture agreement terminated upon the sale of the property; that there was no clear definition of "net profit" in the agreement; that the agreement contained no provision for the division of proceeds resulting from the sale of the property; that "net profit" referred only to the operational profit of the joint venture; and that all note payments received by appellant after the sale of the property were to be divided according to the ownership interests of the parties, i.e., 75 percent to the deceased and 25 percent to appellant.

1. Appellant enumerates as error the court's determination that the joint venture agreement terminated upon the sale of the property and contends that the agreement continued until the deceased's death. The agreement provided that the joint venture would be for a period of 30 years unless terminated sooner by "[a]ny disposition by the Joint Venturers of their entire interest in the Property" or in the event only one joint venturer remained a party to the agreement or by written agreement of the parties. Appellant contends that because the sale was financed with a promissory note and the joint venturers continued to manage the note and retained a security interest in the property, the sale did not constitute "disposition of the joint venturers' entire interest in the property."

"Decisions of the appellate courts of this state have distinguished between mortgages and deeds to secure debt, pointing out that a deed to secure debt conveys title, while a mortgage is only a lien. [Cit.]" *Cherokee Ins. Co. v. Gravitt*, 187 Ga. App. 179, 183 (369 SE2d 779) (1988). The record before this court, however, does not contain the instrument evidencing the joint venture's sale of the building so that we might determine whether the instrument constitutes a mortgage under which appellant continued to have an interest in the property after the sale. Although the record does contain a "Settlement State-

ment" and an "Escrow Memorandum" pertaining to the sale which indicate that the purchasers paid the clerk's fee for the recording of a security deed and the state intangible tax on a security deed, all of which point to the existence of a deed to secure debt and not a mortgage, the trial court made no specific finding as to the nature of the sales instrument. Appellant's contention was raised and considered by the trial court and was resolved in favor of appellee. The court's conclusion is not clearly erroneous.

Appellant argues alternatively that the actions of the parties indicate they intended a modification of the agreement wherein the promissory note given by the purchasers was substituted for the "Property" subject to the agreement. However, this contention is based on factual allegations raised in appellant's brief which are not supported by the record, as a transcript of the probate court hearing was not included in the record on appeal. "[T]his court cannot consider in the appellate process either mere allegations of fact found in a party's pleadings, not admitted by the opposing party, or factual assertions in the parties' briefs, when such allegations and assertions are not supported by the record. [Cit.]" *Nodvin v. West*, 197 Ga. App. 92, 96 (3c) (397 SE2d 581) (1990). "There being a presumption in favor of the regularity of proceedings in courts of competent jurisdiction, we thus must assume that the trial court's findings are supported by sufficient competent evidence. [Cit.]" *Smallwood v. Mulkey*, 198 Ga. App. 496 (402 SE2d 99) (1991). The facts as found by the trial court concerning this enumeration of error support its conclusion that the agreement was terminated upon sale of the property.

2. Appellant also contends the trial court erred in defining "net profit" to mean net profit from the operation of the building only, excluding profit resulting from the sale of the building. Appellee responds that the agreement is ambiguous in two respects: "net profit" was not adequately defined, and the portion of the agreement which sets forth the allocation of net profits and losses, Exhibit C, referred to a non-existent Paragraph 12. Relying on *Lindwall v. Lindwall*, 242 Ga. 13 (1) (247 SE2d 752) (1978), appellee maintains that because the agreement was ambiguous, "the construction put on it by the trial judge sitting as both court and jury can not properly be set aside." However, the Georgia Supreme Court in *Lindwall* also recognized that " '[w]ords generally bear their usual and common signification . . .' and 'the whole contract should be looked to in arriving at the construction of any part.' [Cit.]" Id. Paragraph 3 (a) of the agreement provides: "The parties do hereby form and embark upon a joint venture for the purpose of acquiring, developing, operating, holding and *selling* the Property, and, in the event said Property is sold or disposed of, to divide the profits realized therefrom among the Joint

Venturers as hereinafter set forth. The Joint Venturers hereto acknowledge that no decision has been reached as to the disposition of the Property as of the date of this agreement, it being expressly agreed that the final disposition of the Property being acquired shall be governed by the terms of this Agreement." (Emphasis supplied.) Paragraphs 9 (a) and (b) provide: "(a) Notwithstanding the provisions of Paragraph 3 hereof, and Exhibit B attached hereto, the Joint Venturers, or any of them, may from time to time agree to an allocation of net profits and net losses other than in accordance with their ownership percentages (75% owned by the deceased and 25% by appellant) as set forth in Paragraph 3 hereof, and Exhibit 'B' attached hereto. In this regard the Joint Venturers agree that the net profits or net losses *from the Property* shall be allocated as shown on Exhibit 'C' as executed by all the Joint Venturers and attached hereto and made a part hereof. (b) The terms 'Net profits' and 'Net losses' as used in this Agreement shall be determined through the use of generally accepted accounting practices consistently applied on a cash basis." (Emphasis supplied.)

Exhibit C sets forth the "Allocation of net profits and net losses, pursuant to paragraph 12 herein" as 15 percent to the deceased and 85 percent to appellant. " 'The construction of . . . [a] contract is a matter of law for the court. . . . (Cit.) Where the language of a contract is plain and unambiguous, however, as we find it to be in the instant case, no construction is required or even permissible. (Cits.)' [Cit.]" *Jenkins v. Lanigan*, 196 Ga. App. 424, 425 (1) (396 SE2d 28) (1990). Contrary to the findings of the trial court, in our view, the agreement governed the selling of the apartment building as well as its operation and also provided for the division of proceeds from the sale of the property. While a determination of the appropriate cash basis accounting practice to arrive at the exact amount of net profit might be a matter for the trier of fact, the "net profits" and "net losses" referred to in Paragraph 9 (a) consist of all net profits or net losses "from the Property," including net profits gained in the disposition of the property. The agreement makes no distinction between net profits and losses earned either in the operation of the building or in its disposition. "Whether or not the interpretation of the provision[s] sought by [appellee] 'might be more sensible from a business point of view,' as [she] advocates, 'this court will not rewrite the agreement the parties made, for courts are not at liberty to revise contracts even when construing them. (Cit.)' [Cit.] If [the deceased and] appellant had intended the clear and unambiguous phrase ['net profits or losses from the Property'] to mean ['net profits or losses from the operation of the Property,'] [they] should have so stated." *Copy Systems of Savannah v. Page*, 197 Ga. App. 435, 436-437 (398 SE2d 784) (1990). Moreover, it is of no consequence that Exhibit C

referred to a non-existent Paragraph 12 because it is the reference in Paragraph 9 (a) to the exhibit which authorizes the distribution of net profits as agreed to by the parties. Based on the foregoing, we find the trial court erred in its construction of the agreement with respect to the definition of "net profits."

*Judgment reversed. Birdsong, P. J., and Pope, J., concur.*

DECIDED FEBRUARY 19, 1992 —
RECONSIDERATION DENIED APRIL 1, 1992 — 

*Grenwald, Salo & Sheftall, Ann Salo*, for appellant.
*Freisem, Swann & Malone, John A. Swann*, for appellee.