## 77801. HAUGABROOK v. WACO FIRE & CASUALTY INSURANCE COMPANY.

(380 SE2d 347)

McMURRAY, Presiding Judge.

In January 1985 plaintiff Haugabrook purchased from defendant Waco Fire & Casualty Insurance Company ("Waco") a fire insurance policy covering a building that housed a supermarket and the contents therein. On September 29, 1985, a fire damaged the building and caused the complete destruction of the store's contents. Waco issued checks totaling $49,000 to cover the loss to the building, but paid nothing on the loss of the contents. Contending that defendant had an obligation to pay his loss and that defendant's failure to do so amounted to a bad faith refusal to pay, plaintiff filed this lawsuit. A jury returned a $21,000 verdict, and plaintiff appeals from the judgment entered thereon. Held:

1. Defendant contends that the verdict returned by the jury is without an evidentiary basis. Plaintiff's uncontradicted evidence shows a loss of the contents of the store amounting to $96,000. As the evidence shows that plaintiff had either a 100 percent, a 50 percent, or no insurable interest in the contents of the store, any award to plaintiff would be anticipated to be at least $48,000 based upon a 50 percent insurable interest. Since the jury apparently found for plaintiff on the issue of liability but awarded only $21,000, the verdict was so inadequate as to require a new trial. Karlan v. Enloe, 129 Ga. App. 1, 3 (2), 4 (198 SE2d 331). Therefore, we must reverse the judgment in the case sub judice and return the case for a new trial.

There is no merit in the contention that the amount of the personal property loss was disputed at trial. This position is predicated on the testimony of a certified public accountant ("CPA") employed by defendant that invoices he had received from plaintiff totaled $22,000. This figure was presented in conjunction with other testimony by the CPA as to his failure to obtain complete records in re-

gard to plaintiff's loss, and thus proves nothing in regard to the total amount of the personal property loss. The CPA did not suggest that the $22,000 figure was an estimate as to the value of the contents of the store destroyed during the fire and, indeed, the contrary is readily inferred from his testimony.

Thus, the $22,000 figure for the invoice total can be relevant to a proper recovery only if plaintiff's recovery is limited to an amount for which he can show invoices. Such is not the case in this instance. The pertinent provision in the insurance contract provides in part: "Duties of the Named Insured After A Loss. In case of loss the named insured shall: . . . prepare an inventory of damaged personal property showing in detail, quantity, description, actual cash value and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory . . ." While this contractual provision calls for the attachment of any substantiating documentation there is no language conditioning the insured's recovery upon the existence or availability of such documentation. (Apparently, in the case sub judice, some records of the business were destroyed in the fire.)

Nonetheless, the insured's duty to provide sufficient proof of loss is well provided for, since under the insurance policy the insured is required to prepare an inventory to establish the amount of loss. In the case sub judice, a physical inventory was conducted and defendant has not presented any evidence contesting the accuracy of the inventory. The defendant's CPA witness, who was responsible for investigating the amount of the personal property loss, testified that he knew of no error in the physical inventory. Since the defendant failed to present any evidence which contradicted the result of the physical inventory of the contents of the store destroyed in the fire, the jury was not authorized to use the $22,000 figure as the amount of plaintiff's loss.

2. During his cross-examination of a witness, counsel for defendant used for impeachment purposes a sworn statement given by the witness in March 1985 in a different fire insurance loss case. Plaintiff, claiming surprise, moved that all the witness' testimony concerning the March 1985 statement be stricken since defendant had failed to make plaintiff aware of the statement as a supplement to its answers to plaintiff's interrogatories. The trial court denied the motion.

The interrogatory at issue asked defendant if it was "aware of the existence of any written, recorded or transcribed statements made by anyone concerning this action or the subject matter of this action" and asked it to identify the statement. Counsel for defendant stated at trial that he was aware of the existence of the undisclosed statement "the day before yesterday." The person who verified defendant's answers to the interrogatories testified that he knew when he

signed the answers to the interrogatories that the witness had made a sworn statement, but that he did not realize the statement would have "any bearing" on the case at bar until a few days before trial when he was preparing for the trial. Earlier in the trial, the witness whose prior sworn statement was at issue had testified that plaintiff had owned the supermarket's contents; in the earlier sworn statement, the witness had said that she and her husband owned the store's contents. In this suit, where a central issue was the insurable interest plaintiff had in the store's contents, this evidence can be classified as of a "potentially 'critical' nature." *Hanna Creative Enterprises v. Alterman Foods*, 156 Ga. App. 376, 379 (274 SE2d 761) (1980).

OCGA § 9-11-26 (e) (2) (B) requires a party who has responded to a request for discovery with a response that was complete when made to supplement the response to include information thereafter acquired if the respondent "obtains information upon the basis of which [h]e knows that the response, though correct when made, is no longer true and the circumstances are such that a failure to amend the response is, in substance, a knowing concealment." Defendant's response to the interrogatory should have been amended when the respondent realized the bearing the witness' recorded statement had on the case sub judice.

*Judgment reversed. Carley, C. J., Deen, P. J., Banke, P. J., and Birdsong, J., concur. Sognier, Benham and Beasley, JJ., dissent. Pope, J., disqualified.*

BENHAM, Judge, dissenting.

Inasmuch as I cannot agree that the jury's award of damages is "so small . . . as to justify the inference of gross mistake or undue bias" (OCGA § 13-6-4), I must dissent to Division 1 of the majority opinion.

The majority opinion is dependent upon the conclusion that appellant's evidence of loss, an inventory, undisputedly established an insurable loss of $96,000. I am not able to share the majority's confidence that appellant's evidence of loss was without contradiction.

A certified public accountant retained by appellee testified that he had received from appellant invoices totaling approximately $22,000, and that he had been refused access to additional documents needed to verify the inventory valuation submitted by appellant. While the CPA's testimony did not directly contradict appellant's evidence of a $96,000 loss, "[t]he jury is not 'bound in every case to accept evidence as true although it is not contradicted by direct evidence. It may be inherently subject to discredit, or so from the circumstances.' [Cits.]" *Adams v. Adams*, 218 Ga. 67, 78 (126 SE2d 769) (1962). The testimony of the CPA provided the basis from which

the jury could discredit appellant's evidence of the amount of loss, and also constituted evidence from which the jury could conclude that appellant's amount of loss was approximately $22,000. " 'On appeal, the evidence must be construed to uphold the jury's verdict, and the sole question for determination is whether there is any evidence to authorize the verdict. [Cits.]' " *Trust Co. Bank v. Henderson*, 185 Ga. App. 367 (1) (364 SE2d 289) (1987). The jury verdict of $21,000 had evidentiary support and is not so small, when compared with the evidence, as to justify the inference of gross mistake or bias that would permit appellate interference with a jury verdict. OCGA § 13-6-4. In light of the evidence presented at trial, I am compelled to disagree with the majority's conclusion that the verdict is so inadequate as to require a new trial.

I am authorized to state that Judge Sognier and Judge Beasley join in this dissent.

DECIDED MARCH 17, 1989.

*Mills & Chasteen, Ben B. Mills, Jr.*, for appellant.
*Hugh B. McNatt*, for appellee.