A89A1538. OGLETREE v. NAVISTAR INTERNATIONAL TRANSPORTATION CORPORATION.
(390 SE2d 61)

BEASLEY, Judge.

Plaintiff Jackie Conley Ogletree, individually and as administratrix of the estate of her late husband, Frank Richard Ogletree, appeals the grant of summary judgment to defendant Navistar International Transportation Corporation d/b/a International Harvester Company and the denial of partial summary judgment to her in this products liability case.

The following is undisputed. On March 10, 1984, Campbell, who ran a fertilizer business and spreader service, drove his fertilizer spreader truck to Colbert Seed Company to pick up a load of ammonia nitrate. The fertilizer was located in a compartmentalized bulk-transport trailer called a "Killebrew" which required off-loading from the side. The Killebrew was equipped with a hydraulic motor to transfer its contained material to the transport vehicle. The motor could be quite loud, depending on whether or not it had a muffler and was operated from the end of the trailer while the operator was facing it.

Ogletree, an agricultural supply company salesman, had told his friend and customer Campbell about the fertilizer. Ogletree was in the office at Colbert Seed when Campbell arrived in his truck. Campbell and Ogletree had known each other for at least ten years during which time Ogletree was in the business of fertilizer or chemical sales. Campbell pulled his truck up to the office and stopped, waiting to get on the scales and be weighed in. Ogletree had seen Campbell's truck, had been around him when Campbell was operating it and was familiar with it. Ogletree came out of the office and weighed Campbell's truck. After weighing, Campbell backed his truck off the scales and into the street as was the custom at Colbert Seed. Ogletree got onto the running board of the truck and accompanied Campbell to the top

of the hill where the Killebrew with the fertilizer was parked.

Ogletree located the correct Killebrew, told Campbell, and disappeared from Campbell's view. Campbell pulled up and, aided by his rear-view mirrors, began to back around to come up alongside the Killebrew; most people backed up to get close to the Killebrews because of their tapered sides. There were two Killebrews of the same shape and size located next to each other in the storage yard. The Killebrew that Campbell had in sight was not the one to be unloaded and the one that Ogletree had indicated but rather was the one immediately adjacent to it and, from Campbell's perspective, to the right of the appropriate one. Ogletree was standing at the presenting end of the correct Killebrew; its engine was running. Unable to see Ogletree, Campbell struck and killed him as Campbell mistakenly backed his truck up to the adjacent Killebrew.

Campbell's truck originated as a cab and chassis manufactured in February 1978 by International Harvester Company, the corporate predecessor of Navistar International Transportation Corporation. International Harvester sold the cab and chassis without a body to Penske Leasing, a renter of moving vans, in April 1978. At that time, audible back-up alarms were available as optional equipment on the cab and chassis but Penske did not request such a device and one was not installed.

Campbell bought the vehicle from a dealership in 1982. The van body was removed prior to delivery to Campbell. Campbell had the chassis shortened and then took the vehicle to Newton Crouch, Inc., a manufacturer and installer of material spreaders, to have a fertilizer spreader body reworked and mounted on the chassis. No back-up alarm was added at that time and the vehicle did not have an alarm when it struck Ogletree. In approximately twenty years of being in the fertilizer business, Campbell had never seen a fertilizer spreader with a back-up alarm.

Mrs. Ogletree, individually and as administratrix, sued Navistar and Newton Crouch, Inc., for wrongful death, pain and suffering, and funeral, medical, and necessary expenses of her deceased husband. The claim for funeral, medical, and necessary expenses was later withdrawn.

The amended complaint alleged that Navistar was under a duty, to those reasonably forseeably affected thereby, to design and manufacture the subject truck with due care for the safety of persons in the path of the rearward movement of the vehicle, who are outside the foreseeable field of vision of the operator of the vehicle, or who reasonably fail to see or hear or otherwise sense the approach of the vehicle under such conditions; the deceased was engaged in such reasonably foreseeable activities under such conditions in that he was standing in the path of the rearward movement of the vehicle, he was

outside the foreseeable field of vision of the operator of the vehicle, and he reasonably failed to see, hear, or otherwise sense the approach of the vehicle; Navistar breached its duty to the deceased by failing to incorporate into its design and manufacture of the vehicle an audible warning device reasonably likely to warn the deceased of the approach of the vehicle under the stated conditions.

The suit also alleged that Newton Crouch in connection with its manufacture of the material spreader was under a duty to design, manufacture, and install it with due care under the same circumstances contended as to Navistar and that Newton Crouch breached its duty to the deceased by failing to incorporate into the design, manufacture, and installation of the spreader an audible warning device.

Navistar moved for summary judgment on the basis that it had no duty as a matter of law to install a back-up alarm on the complete cab and chassis as demonstrated by considerations of trade custom, relative expertise, and practicality. Alternatively, it argued that the cab and chassis were not negligently designed or manufactured because the absence of a back-up alarm was open and obvious to any user or bystander.

It submitted an affidavit from an engineer in its "Product Integrity Group" which in essence stated that Navistar had no knowledge of the sale of the cab and chassis to Campbell; it did not participate in the decision to mount a fertilizer spreader; at the time of sale to Penske, the operator had an unobstructed view of the rear of the chassis and the cab and chassis satisfied applicable state and federal safety standards; the cab and chassis were suitable for a large variety of body types; it was neither the trade custom nor the industry practice to install a back-up alarm on a cab and chassis.

Mrs. Ogletree moved for partial summary judgment on the issue of the International Harvester's, i.e., Navistar's liability on these bases: (1) the industry trade or custom was flatly contrary to the standard of care as to such trucks at the time the subject truck was sold, incomplete; (2) the particular modification made by Newton Crouch was foreseeable to International Harvester at the time of initial sale of the incomplete truck; (3) the particular use to which the truck, as modified, was put at the time the deceased was killed was foreseeable to International Harvester at the time it sold the incomplete truck; and (4) the failure to install such a back-up alarm device was the proximate cause of the death.

She submitted the lengthy affidavit of a licensed professional engineer who in essence stated that the trade custom of not installing back-up alarms on such cabs and chassis was in violation of the standard of care in the industry as given by the Society of Automotive Engineers, Inc., and not in compliance with certain regulations of the

Occupational Safety & Health Administration; in his opinion the circumstances of the fatal event were precisely the sort that were foreseeable to a manufacturer such as International Harvester at the time of the sale of the truck.

Navistar filed a second affidavit by its expert stating that it was not foreseeable that the cab and chassis would be used in an agricultural setting; at the time of sale there was no blind spot; the installation of a back-up alarm in every incomplete cab and chassis was not practical, useful, desirable, or legally required in view of the numerous types of completed vehicles for which the cab and chassis might be appropriate.

After a hearing on the motions and consideration of the briefs, evidence, and arguments, the trial court determined that Navistar had no duty as a matter of law to install a back-up alarm on the vehicle, granted the company summary judgment, denied partial summary judgment to plaintiff, and entered final judgment in favor of Navistar pursuant to OCGA § 9-11-54. Plaintiff Ogletree appealed.

1. An action in products liability may proceed on one or a combination of theories of negligence, strict liability, or breach of warranty. See *Coast Catamaran Corp. v. Mann*, 171 Ga. App. 844 (321 SE2d 353) (1984), aff'd 254 Ga. 201 (326 SE2d 436) (1985) (negligence and strict liability); *Fortner v. W. C. Cayne & Co.*, 184 Ga. App. 187 (360 SE2d 920) (1987). Even though the parties' contentions arguably raise issues in strict liability, appellant maintained below and insists on appeal that her cause of action is solely in negligence.

The key issue is whether or not Navistar showed as a matter of law that it had no duty to install the alarm or that Ogletree's injuries and death resulted solely from his own negligence in that he assumed the risk of injury.

We must address the latter because, although the trial court did not resolve that issue one way or the other, if Navistar would be entitled to summary judgment on this ground we would affirm the trial court on the "right for any reason" rule. *Orkin Exterminating Co. v. Walker*, 251 Ga. 536, 539 (2) (c) (307 SE2d 914) (1983).

This latter issue is easily disposed of. Navistar's defense in this regard is that the absence of an alarm and the dangers attendant thereto were "open and obvious" to Ogletree, who nevertheless stood to the rear of the truck with his back to it so he could not watch its movement and with the Killebrew's loud noise overcoming the sound of the truck, unenhanced by an alarm, as it approached.

However, it is not conclusively shown as fact that Ogletree knew that Campbell could not see him due to a blind spot, or that Campbell had made a mistake and the truck was coming towards him and would strike him if he did not move. That is, it is not established that Ogletree knew of the immediate hazard or appreciated the danger he

was in as the truck backed up, even though it was obvious that it was backing up without an audible alarm. See *Deere & Co. v. Brooks*, 250 Ga. 517 (299 SE2d 704) (1983). Actual knowledge of the risk on the part of the injured party must be shown for assumption of the risk to govern. Restatement 2d, Torts, § 496D, and Comment (c); see *Dorsey Trailers Southeast v. Brackett*, 185 Ga. App. 172, 175 (363 SE2d 779) (1987); *Barnes v. Harley-Davidson Motor Co.*, 182 Ga. App. 778 (357 SE2d 127) (1987); *Trailmobile v. Smith*, 181 Ga. App. 134 (1) (351 SE2d 528) (1986); *Giordano v. Ford Motor Co.*, 165 Ga. App. 644 (299 SE2d 897) (1983).

The state of the evidence in this case does not as a matter of law inject an intervening cause via the act of the injured party so as to block Navistar's negligence, assuming there is such, from making it liable. See *Union Carbide Corp. v. Holton*, 136 Ga. App. 726, 729 (1) (222 SE2d 105) (1975).

Whether or not a duty existed to add an audible back-up alarm when International Harvester manufactured and sold the cab and chassis, an incomplete truck, in 1978 requires a more detailed analysis.

In this state a cause of action for negligence requires " '(1) a legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and, (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty.' *Lee Street Auto Sales v. Warren*, 102 Ga. App. 345 (1) (116 SE2d 243) (1960)." *Bradley Center v. Wessner*, 161 Ga. App. 576, 580 (287 SE2d 716) (1982), aff'd 250 Ga. 199 (1982).

The quarrel here is whether or not there was a duty in the first place. The trial court held there was not, as a matter of law, so for the purpose of this appeal we assume that plaintiff has shown some evidence of breach of the duty she says can be found to exist, plus proximate cause and damages. The element of breach is met by the proof that International Harvester did not install an alarm, and the element of damage is not in dispute insofar as Mr. Ogletree's death is concerned. The element of proximate cause is more problematical, although there is evidence of it.

The essence of negligence "consists of exposing another to whom one owes a duty, or exposing oneself, to a foreseeable unreasonable probability of harm. Reasonable foresight does not require of a plaintiff or a defendant that he anticipate exactly what will happen and exercise perfect judgment to prevent injury. 'Not what actually happened, but what the reasonably prudent person would then have foreseen as likely to happen, is the key to the question of reasonableness.'

[Cit.] 'Negligence is predicated on faulty or defective foresight rather than on hindsight which reveals a mistake.' [Cits.]" *Ellington v. Tolar Constr. Co.*, 237 Ga. 235, 238 (3) (227 SE2d 336) (1976). If a defendant owes no legal duty to the plaintiff, there is no cause of action in negligence. *Washington v. Combustion Engineering*, 159 Ga. App. 555, 557 (284 SE2d 61) (1981).

"[W]hat duty a defendant owed a plaintiff is . . . a policy problem — a matter of law." *Housing Auth. of Atlanta v. Famble*, 170 Ga. App. 509, 512 (317 SE2d 853) (1984). There is no law in this state, nor was there such in 1978, requiring a manufacturer of a truck or the cab and chassis part of a truck to affix a safety device for back-ups. Georgia has regulated the use of horns and warning devices on motor vehicles, see OCGA § 40-8-70, but there is no affirmative legislative pronouncement requiring the installation of audible back-up alarms on truck rigs like the subject one.

Thus the matter is thrown into the common law, which does not specifically set this particular requirement either. If such a duty exists, it is because it arises under the statute which provides that: "In general, ordinary diligence is that degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances . . . . The absence of such diligence is termed ordinary negligence." OCGA § 51-1-2. Thus the fact that the truck was patently incomplete when it left International Harvester does not immunize Navistar from liability but relates only to three inquiries: 1) whether at this stage it was reasonably foreseeable that a person such as Ogletree would be injured if an alarm was not installed by International Harvester; 2) whether it was reasonably foreseeable that a finisher or modifier of the product would install the device; 3) whether installation by International Harvester was practical, economically feasible, and technically feasible. See *Dorsey Trailers Southeast v. Brackett*, 185 Ga. App. 172, supra. *Talley v. City Tank Corp.*, 158 Ga. App. 130 (279 SE2d 264) (1981); *Verge v. Ford Motor Co.*, 581 F2d 384 (3rd Cir. 1978).

The parties argue about the relevancy of OSHA regulations and the standards of the Society of Automotive Engineers. OSHA's federal regulations govern employers and not manufacturers, but they are some evidence of the significance and availability of the alarm and International Harvester's knowledge thereof. On the other side of the coin, it could be argued that they are evidence that International Harvester reasonably relied on the ultimate employer's installing an alarm because federal regulations cast such a duty on it.

As to the Society standards, although they do not set the legal standard, they are some evidence of the standard in the industry and thus are relevant to whether or not an ordinarily prudent manufacturer would install the alarm. *Smith v. Godfrey*, 155 Ga. App. 113 (1)

(270 SE2d 322) (1980); Restatement 2d, Torts, comments §§ 295A and 288C.

"In a products liability case predicated on negligence, the duty imposed is the traditional one of reasonable care and the manufacturer need not provide, from a design standpoint, a product incapable of producing injury. *Greenway v. Peabody Intl. Corp.*, 163 Ga. App. 698, 699 (1) (294 SE2d 541) (1982). Georgia law does not require a manufacturer to occupy the status of an insurer with respect to product design, *Hunt v. Harley-Davidson Motor Co.*, 147 Ga. App. 44, 46 (4) (248 SE2d 15) (1978), . . . The manufacturer is under no obligation to make a machine 'accident proof or foolproof,' *Fortner v. W. C. Cayne Co.*, supra at 190 (2) and *Poppell v. Waters*, 126 Ga. App. 385, 387 (1) (190 SE2d 815) (1972), or even 'more safe.' *Stovall & Co. v. Tate*, 124 Ga. App. 605, 611 (1) (184 SE2d 834) (1971)." *Honda Motor Co. v. Kimbrel*, 189 Ga. App. 414, 418 (2) (376 SE2d 379) (1988).

" 'Generally, ' " 'if a manufacturer does everything necessary to make the machine function properly for the purpose for which it is designed, if the machine is without any latent defect, and if its functioning creates no danger or peril that is not known to the user, then the manufacturer has satisfied the law's demands. . . .' " ' Furthermore, while a product may be defective because the manufacturer has failed to warn the user of a latent danger arising from a reasonable use of the product ([Cit.]), "(i)t is well-established that there is no duty resting upon a manufacturer or seller to warn of a product-connected danger which is obvious or generally known, or of which the person who claims to be entitled to the warning has actual knowledge. . . . [Cit.]" [Cit.]' " *Coast Catamaran Corp. v. Mann*, supra at 847 (2). See also *Greenway*, supra; *Poppel*, supra; *Hunt*, supra; *Trailmobile v. Smith*, supra; and *Stodghill v. Fiat-Allis &c. Machinery*, 163 Ga. App. 811 (295 SE2d 183) (1982).

The manufacturer may be liable for omission of a safety device as well as for a defect which affects the operation of a product, if due care requires the installation of a safety device in the first place. *Honda*, supra. Ogletree's case goes one step farther. The injured person was not the user but rather a pedestrian who was crushed by the product's use without an alarm. The alarm would be for the safety of this bystander and not for the safety of the user. Compare *Honda*, supra.

The duty would extend to such a person if harm to him was reasonably foreseeable. There is evidence that it was reasonably foreseeable to the cab and chassis manufacturer that in normal operation, the completed product would be backed up and there would be people behind it who were unaware of its rearward movement towards them. Thus, the fact that it was "open and obvious" that the cab and chassis did not have an alarm when International Harvester manufac-

tured and sold it does not foreclose its liability, since the alarm was not made for the safety of the purchaser or user but for third parties who may only learn of the absence after not being warned. Restatement 2d, Torts, § 389; *J. C. Lewis Motor Co. v. Williams*, 85 Ga. App. 538 (69 SE2d 816) (1952); *Moody v. Martin Motor Co.*, 76 Ga. App. 456 (46 SE2d 197) (1948); *Maytag Co. v. Arbogast*, 42 Ga. App. 666 (157 SE 350) (1930). The nature and purpose of the device is what extended the duty to a non-user of the truck itself.

Because International Harvester had alarm mechanisms in its plant and made them optional to purchasers, there is evidence that it knew of the need for and availability of such safety devices.

Because International Harvester sold this rig without an alarm, there is evidence that it could reasonably foresee that an alarm would not be affixed when the truck was completed or thereafter, and there was evidence that it would be completed so as to present a blind spot to an operator, creating a danger to persons behind the truck. See Restatement 2d, Torts, § 389; see also *Lewis*, supra; *Moody*, supra; *Maytag*, supra. Thus, the two intervening cause factors which Navistar claims shield it from liability, i.e., the failure of a purchaser to add the safety device and the failure of the pedestrian to observe an open and obvious absence, were arguably foreseeable so as to cast a duty on Navistar and satisfy the first element of the cause of action. Of course, both Navistar and the purchaser or modifier could be liable. See *Giordano*, supra at 644-645.

Thus there was evidence that International Harvester could reasonably foresee the damages which did in fact occur.

Foreseeability itself does not allow the imposition of a duty. The failure which is complained of must relate to action which an ordinarily prudent manufacturer would take under the circumstances. International Harvester did not show as a matter of law that an ordinarily prudent manufacturer would not install the alarm. Rather the evidence was that the alarm was available for about $40, the cost could be passed on to the purchaser, and International Harvester knew how to install the alarm. Thus there was evidence of economic feasibility, technological feasibility, and practicability. See *Verge*, supra.

The experts' testimony is in dispute regarding the following factors:

a. whether it was reasonably foreseeable the truck would be completed without the device and with the creation of a blind zone;

b. the trade custom and industry practice, which relates to the standard of due care to be exercised by an ordinarily prudent person;

c. whether reasonable prudence required International Harvester to install the device, considering economic feasibility, cost relative to benefit, practicality (as to who should install, assuming it should be installed), necessity for the device (crucial versus good to have versus

unnecessary), technical feasibility, all of which involve a balancing process; see *Verge*, supra;

d. degree of foreseeability of this particular use, i.e., backing operation where there is a pedestrian whom driver cannot see (on scale of remote to certainty). Restatement 2d, Torts, §§ 395 and 291; *Dorsey Trailers Southeast*, supra at 172; *Ford Motor Co. v. Stubblefield*, 171 Ga. App. 331, 335 (319 SE2d 470) (1984); *Pepper v. Selig Chem. Indus.*, 161 Ga. App. 548 (288 SE2d 693) (1982).

This nonresolution by undisputed evidence of the two primary areas in the element of duty in this case, foreseeability and reasonableness, precludes summary judgment to defendant Navistar.

Questions of negligence are ordinarily left for juries, except in plain, palpable, and indisputable cases. *Brooks v. Coliseum Park Hosp.*, 187 Ga. App. 29, 34 (1) (369 SE2d 319) (1988); *Beck v. Blackerby*, 156 Ga. App. 15 (274 SE2d 68) (1980).

2. We have examined the material evidence which is in dispute, and we cannot say that plaintiff has shown Navistar's liability as a matter of law. Thus the trial court was correct in denying partial summary judgment to her.

*Judgment affirmed in part and reversed in part. Carley, C. J., and McMurray, P. J., concur.*

Decided November 28, 1989 — Rehearings denied December 19, 1989 — 

*Winburn, Lewis & Barrow, Gene Mac Winburn, John J. Barrow*, for appellant.

*Neely & Player, Edgar A. Neely III, Richard B. North, Jr., Long, Weinberg, Ansley & Wheeler, Charles B. Marsh*, for appellee.

*Bell & Bell, John Bell, Beltran & Buckley, Frank J. Beltran, William Q. Bird, Devine & Morris, Foy Devine*, amici curiae.