A97A1389. HUNTER et al. v. NISSAN MOTOR COMPANY, LTD. OF JAPAN et al.

(494 SE2d 751)

MCMURRAY, Presiding Judge.

In January 1989, Margaret Thrasher Hunter was driving a 1982 Nissan Sentra automobile ("Sentra") with her two sons as rear-seat passengers. While she was waiting to make a turn, her Sentra was struck in the rear by a 1980 Chevrolet Monte Carlo automobile operated by an allegedly intoxicated minor under the legal drinking age. The rear of Hunter's Sentra collapsed, crushing the car's rear passenger area. One child died, the other was injured.

Hunter filed a products liability action against Nissan Motor Company, Ltd. of Japan and Nissan Motor Corporation in U.S.A ("the Nissan defendants"), individually and in her representative capacities for her surviving child and her deceased child's estate, alleging (in pertinent part) that the Nissan defendants defectively designed the Sentra to withstand rear-end collisions.[1] At the April 1995 trial, however, the trial court directed the jury to disregard key expert-testimony supporting this claim. Specifically, the trial court excluded Automotive Design Engineer Billy S. Peterson's testimony that $3 worth of steel during the manufacturing process or a $20 impact-absorbing bumper would have cured the alleged defect (the Sentra's unreinforced impact-absorbing frame stubs) which caused the Hunters' catastrophic injuries.[2] The trial court imposed this sanction because Hunter did not supplement her interrogatory responses or Peterson's deposition so as to update the Nissan defendants regarding Peterson's suggested safer design alternatives, as was allegedly required by OCGA § 9-11-26 (e).

The jury found in favor of the Nissan defendants. This appeal followed. *Held*:

1. Hunter contends the trial court erred in striking Billy S. Peterson's expert testimony regarding alternative safer designs for the 1982 Sentra automobile. We agree.

Exclusion of probative trial evidence is not an appropriate remedy for curing an alleged discovery omission. *White v. Lance H. Herndon, Inc.*, 203 Ga. App. 580, 581 (5) (417 SE2d 383). Such a harsh and unnecessary sanction was flatly rejected, albeit under different circumstances, in *Sharpe v. Dept. of Transp.*, 267 Ga. 267, 270 (2), 271 (476 SE2d 722), where the Supreme Court of Georgia held that a motion to strike is never an appropriate tool for excluding pro-

---

[1] She also pressed claims against the driver of the Monte Carlo and the drinking establishment which served the underage driver alcoholic beverages before the collision.

[2] This alternative design testimony is relevant under the risk-utility test prescribed in *Banks v. ICI Americas,* 264 Ga. 732, 733 (1) (450 SE2d 671).

bative evidence during a civil jury trial. The only appropriate remedy for Hunter's alleged failure to update her discovery responses or her expert witness' deposition testimony in the case sub judice (if any such update was even required) was postponement of trial or a mistrial.[3] *White v. Lance H. Herndon, Inc.*, 203 Ga. App. 580, 581 (5), supra. See *Jones v. Atkins*, 120 Ga. App. 487, 490 (2) (171 SE2d 367). The trial court simply did not have authority or latitude to grant the Nissan defendants' motion to strike the Hunters' expert's "alternative design" testimony. The trial court's judgment must therefore be reversed for a new trial so that a jury may consider Billy S. Peterson's expert testimony. Saying otherwise, as does the dissent, not only disregards controlling authority, but also disregards this State's venerable policy against obliquely coursing appropriate paths in the name of procedural gaming by excluding relevant evidence, which is not inadmissible for some reason of prejudice or illegality. See *Ga. Farm &c. Ins. Co. v. Merck*, 209 Ga. App. 879, 880 (1) (434 SE2d 585), and cits.

2. Hunter contends the trial court erred in denying her motion to exclude the testimony of Jeff Worth, a testing engineer who conducted a crash test between a Sentra automobile and a Monte Carlo automobile which the Nissan defendants used in their defense. Hunter argues that Worth was not identified during discovery as an expert and that the substance of his testimony was never disclosed. Since these alleged omissions will no longer be an obstacle to Jeff Worth's testimony upon remand for a new trial, it is unnecessary to address this enumeration of error.

3. Our holding in Division 1 of this opinion renders moot Ms. Hunter's final enumeration of error regarding the trial court's exclusion of Billy S. Peterson as a rebuttal witness.

*Judgment reversed. Birdsong, P. J., Ruffin and Eldridge, JJ.,*

---

[3] The issue of whether Hunter was required to update her interrogatory responses or her expert's deposition testimony is not clear. Any such duty arises in the case sub judice only if Hunter knowingly concealed her expert witness' substantive testimony. OCGA § 9-11-26 (e) (2) (B). We do not believe that a finding of such a "knowing concealment" is supported under the circumstances appearing in the case sub judice. The Nissan defendants' attorneys were aware, when the Hunters' expert gave his deposition, that the expert had not yet seen all of the data relevant for forming an opinion regarding the safety of the 1982 Nissan "Sentra" automobile in question. This is apparent because Hunter's expert informed defense counsel during his deposition (which was taken almost two years before trial) that he had not yet formed an opinion as to alternative design methods. Under these circumstances, in light of the fact that the Nissan defendants took the Hunters' expert's deposition during discovery and before these defendants turned over engineering studies (two videotaped recordings containing 1982 Nissan "Sentra" automobile rear-end crash tests) relevant to evaluating the design defect in question, we cannot say that Ms. Hunter had a duty to supplement her interrogatories or her expert witness' deposition. If the Nissan defendants wanted further information regarding Billy S. Peterson's opinion as to safer design alternatives, they could have easily questioned him during a second deposition before trial.

*concur. Andrews, C. J., Beasley and Smith, JJ., dissent.*

BEASLEY, Judge, dissenting.

I respectfully dissent as to Division 1 of the majority opinion and the reversal of the judgment.

1. In this case, expert witness Peterson referred to the severity of the damage to the Nissan as excessive crush and attributed it to a lack of structure in the rear of the vehicle. He identified the Nissan's stub frame as the energy absorber that manages crush in this part of the car. It was his opinion that in order for the stub frame to function effectively it must remain horizontal, which it failed to do in the collision.

When Peterson testified that the stub frame can be stabilized by installing a "sleeve," defendants objected on grounds that the witness did not respond to questioning on this subject during his deposition and plaintiff did not comply with a defense request to supplement the witness' answers to its interrogatories with newly acquired information. After the court overruled the objection, Peterson testified that when the Nissan was designed and manufactured, the sleeve could have been installed for about $3 per vehicle. Counsel asked Peterson about other available safer designs, and the same objection was made and overruled.

Peterson then identified a "five mile per hour bumper" as another available alternative that would have cost $20 per vehicle. Defendants renewed their objection, and after learning that Peterson had arrived at his opinions concerning alternative designs after his deposition but before trial, the court ruled that plaintiff failed to comply with the discovery obligation to supplement the witness' interrogatory responses. The court granted defendants' motion to strike the alternative-design testimony and instructed the jury to disregard it. Nonetheless, the court charged the jury on the risk-utility doctrine adopted in *Banks* and that a factor integral to assessment of design utility is the availability of alternative designs.[4]

The Civil Practice Act (CPA) provides that "[a] party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired," except as set forth in subsections (1) and (2). OCGA § 9-11-26 (e). Subsection (1) states: "A party is under a duty seasonably to supplement his response with

---

[4] Subsequent to the trial of this case, the Supreme Court decided *Sharpe v. Dept. of Transp.*, 267 Ga. 267 (476 SE2d 722) (1996), which disallows the use of a motion to strike as a procedural tool to object to evidence except in limited instances in criminal cases. The decision in *Sharpe* was prospective only. Moreover, *Sharpe* was based on the contemporaneous objection rule; in this case the defendants made a contemporaneous objection.

respect to any question directly addressed to: (A) The identity and location of persons having knowledge of discoverable matters; and (B) The identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify and the substance of his testimony." Subsection (2) states: "A party is under a duty seasonably to amend a prior response if he obtains information upon the basis of which: (A) He knows that the response was incorrect when made; or (B) He knows that the response, though correct when made, is no longer true and the circumstances are such that a failure to amend the response is, in substance, a knowing concealment." This section of the CPA applies to both oral depositions as well as written forms of discovery, *Glennville Hatchery v. Thompson*, 164 Ga. App. 819, 824 (6) (298 SE2d 512) (1982), and extends to the time of trial. See *Haugabrook v. Waco Fire &c. Ins. Co.*, 190 Ga. App. 815, 816 (2) (380 SE2d 347) (1989).

It was not error to rule that plaintiff failed to fulfill her disclosure obligations. In such instances, the question is what sanction should be imposed. The CPA does not provide a specific answer. *Hanna Creative Enterprises v. Alterman Foods*, 156 Ga. App. 376, 377 (2) (274 SE2d 761) (1980). Case law provides the solution.

In the pre-CPA case of *Nathan v. Duncan*, 113 Ga. App. 630, 638 (7) (149 SE2d 383) (1966), defendant objected to the testimony of lay witnesses whose existence was not disclosed until trial. Pretermitting the question of whether plaintiff was under a duty to list the witnesses in answer to defendant's interrogatory as worded, the Court held that "the proper procedure when [undisclosed witnesses] were called to testify was not to object to their testifying or to the admission of their testimony, but to move for a postponement of the trial for a sufficient length of time to enable the defendant to interview them, check the facts to which they would testify, and, if indicated, arrange to secure rebuttal evidence or to impeach them. It would be an abuse of discretion, requiring the grant of a new trial, to refuse the postponement. If this should not come up until the trial was already under way and the court determined that a postponement was impracticable, a mistrial should be declared. [Cits.]" Id. at 641. It also suggested a citation for contempt. The Court looked at the application of the federal rules in fashioning its answer to a violation of the civil procedure statute which preceded the CPA.

*Jones v. Atkins*, 120 Ga. App. 487, 490 (2) (171 SE2d 367) (1969), was decided after the adoption of the CPA. The Court considered interpretation of the corresponding federal rules, articulated the purpose of pretrial disclosure requirements (avoid surprise at trial), and applied the complementary rationale and practical sanction which had been utilized in *Nathan*. The Court in *Jones* concluded that exclusion of the witness' testimony was not the solution (except

where information is deliberately withheld) and that a postponement of trial or, if necessary, a mistrial, is the remedy. As a result, the court reversed the denial of a postponement or mistrial and required a new trial, for the trial court had allowed "no time whatsoever" for the surprised opponent to conduct discovery of the witness.

The approach taken in *Nathan* and *Jones* was carried forward in *Hanna* and other cases decided under the CPA. See *Norfolk Southern R. Co. v. Perkins*, 224 Ga. App. 552, 556 (4) (481 SE2d 545) (1997); *Orkin Exterminating Co. v. McIntosh*, 215 Ga. App. 587, 588 (2) (452 SE2d 159) (1994); *White v. Lance H. Herndon, Inc.*, 203 Ga. App. 580, 581 (5) (417 SE2d 383) (1992); *Kamensky v. Stacey*, 134 Ga. App. 530 (215 SE2d 294) (1975). In *Glennville Hatchery*, supra, and *Jones v. Livingston*, 203 Ga. App. 99, 102 (4) (416 SE2d 142) (1992), however, we did recognize that the trial court has discretion to exclude undisclosed evidence under certain circumstances. See also *State v. Kampplain*, 223 Ga. App. 16, 18 (477 SE2d 143) (1996) ("[e]vidence exclusion is an extreme sanction and not one favored as a matter of course in the law").

In accordance with the *Jones v. Atkins'* recognition that deliberately withheld evidence may be excluded, *Wilson v. Southern R. Co.*, 208 Ga. App. 598, 603 (3) (431 SE2d 383) (1993) (physical precedent only), held that "[i]n the absence of a deliberate withholding for improper purposes, it is the general rule that '(w)hen a party proffers at trial evidence which should have been disclosed during discovery, exclusion of the proffered evidence is not an authorized sanction. The proper sanction is to order a postponement or a mistrial.' [Cits.]" *Wilson* sustained the trial court's admission of certain evidence, noting that the record failed to support a claim that it had been deliberately withheld so as to prejudice the other party.

In the whole-court case of *Whitley v. Gwinnett County*, 221 Ga. App. 18, 22 (5) (470 SE2d 724) (1996), the trial court refused to exclude certain defense exhibits not provided to the plaintiff until trial despite pretrial discovery requests for such information. But the court gave counsel an opportunity to review the exhibits before cross-examining the witness introducing them. Noting that there was no evidence the exhibits were deliberately withheld for improper purposes, we held that the trial court did not abuse its discretion in declining to exclude the exhibits. We approvingly cited the *Wilson* holding.

In reviewing the trial court's grant of defendants' motion to strike in this case, we must ask two questions. Was the trial court authorized to find that the testimony of the expert witness on the undisclosed subject had been deliberately withheld? Should the court have utilized a remedy less drastic than evidence exclusion?

As a remedy for pretrial nondisclosure, plaintiff argued at trial

that under Georgia law, the court could do nothing more than give the defendants an opportunity to interview the witness prior to cross-examination. Defendants then suggested that they were surprised by the witness' testimony, and the court indicated that non-disclosure of the information had also prejudiced the defense. Defendants argued that the suggested remedy would be inadequate because additional testing of the Nissan would be required. The court was thus authorized to find that a continuance would have been inadequate. On appeal, plaintiff argues that the trial court should have declared a mistrial as an alternative to excluding or striking the expert's testimony, but defendants did not move for a mistrial and plaintiff did not suggest it as a less drastic remedy. Moreover, a trial court in its discretion may exclude evidence deliberately withheld for an improper purpose and is not required to declare a mistrial in the alternative.

Under the record before us, the trial court could have found that the expert's testimony on the undisclosed subject had been deliberately withheld to prejudice the defendants, but the parties did not address this question and the court did not make any finding on it. We therefore should remand this case to the trial court with the direction that the court conduct a hearing to determine the question of whether the undisclosed evidence was deliberately withheld for improper purposes.

As I find no merit in the remaining enumerations, I would affirm the judgment on the condition that the trial court answer the foregoing question in the affirmative. If the court did instead answer this question in the negative, only then would plaintiff be entitled to a new trial.

2. Although the majority does not address this issue, I note that there is no merit in Hunter's argument that her compliance with discovery was affected by the timing of the Supreme Court's decision in *Banks v. ICI Americas*, 264 Ga. 732, 733 (1) (450 SE2d 671) (1994). Hunter argues that evidence of alternative-safer designs was not admissible in product-liability cases in Georgia before *Banks*.

When this action was filed and during the discovery period, *Mann v. Coast Catamaran Corp.*, 254 Ga. 201 (326 SE2d 436) (1985), was in effect. After discovery closed but several months before trial, *Banks* overruled *Mann*. The Supreme Court stated in *Banks* that in *Mann* it had "rejected evidence of alternative safer designs to hold [instead] that where a product was 'reasonably suited for its intended purpose' and where the presence or absence of a design feature did not prevent the product 'from functioning properly in its intended use, such cannot be considered defective design.' Id. at 202 (1)." *Banks*, supra at 733.

The court in *Mann* did not specifically consider whether evidence of alternative safer designs was admissible, but instead rejected a

claim that a sailboat not grounded or insulated against electrical contact was defectively designed. The court held that neither the lack of grounding nor of insulation prevented the boat from functioning properly in its intended use of sailing.

In *Banks*, the court adopted a risk-utility analysis in design defect cases, stating that "[o]ne factor consistently recognized as integral to the assessment of the utility of a design is the availability of alternative designs," which, if safer and equally efficacious, diminish the justification for the challenged design. Id. at 735. The court held that "in determining whether a product was defectively designed, the trier of fact may consider evidence establishing that at the time the product was manufactured, an alternative design would have made the product safer than the original design and was a marketable reality and technologically feasible. [Cit.]" (Footnote omitted.) Id. at 736. Compare Restatement (Third) of Torts: Products Liability, § 2 (b) (1997).[5]

Defendants cite *Greenway v. Peabody Intl. Corp.*, 163 Ga. App. 698 (294 SE2d 541) (1982), and *Ogletree v. Navistar Intl. Transp. Corp.*, 194 Ga. App. 41 (390 SE2d 61) (1989), in arguing that evidence of alternative designs was relevant and admissible under Georgia law prior to *Banks*. *Ogletree*, but not *Greenway*, supports them. In *Greenway*, parents of a child who was killed while playing in a dumpster sued the manufacturer on theories of negligent design and manufacture, as well as strict liability. Although plaintiffs' expert testified that the dumpster could have been made safer by certain alternative designs, this Court affirmed the trial court's grant of the manufacturer's motion for directed verdict on the ground that the dumpster functioned properly for its intended purpose.

In *Ogletree*, the plaintiff claimed that a truck had been negligently designed and manufactured because the manufacturer had not installed a sound device to warn bystanders of the approach of the vehicle. Relying on evidence that an alarm was available for about $40 and that the manufacturer could have installed it, we reversed the trial court's grant of the manufacturer's motion for summary judgment. *Ogletree* was overruled on other grounds in *Weatherby v. Honda Motor Co.*, 195 Ga. App. 169 (393 SE2d 64) (1990). Subsequently, *Ogletree v. Navistar Intl. Transp. Corp.*, 227 Ga. App. 11 (488 SE2d 97) (1997), applied *Weatherby* so as to affirm the trial court's grant of a j.n.o.v. in favor of the manufacturer.

---

[5] "§ 2. A product: . . . (b) is defective in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the alternative design renders the product not reasonably safe[.]"

The case should be remanded.

I am authorized to state that Chief Judge Andrews and Judge Smith join in this dissent.

DECIDED DECEMBER 5, 1997 — 

*Morris & Webster, Steven R. Webster, Craig A. Webster*, for appellants.

*King & Spalding, Lanny B. Bridgers, Steven J. Estep, Blasingame, Burch, Garrard, Bryant & Ashley, E. Davison Burch, Amy M. Power*, for appellees.