A97A0368. OGLETREE et al. v. NAVISTAR INTERNATIONAL TRANSPORTATION CORPORATION.

(535 SE2d 545)

ELLINGTON, Judge.

This is the sixth appearance of this case before us and the second time our Supreme Court has remanded it here. In its most recent opinion, the Supreme Court succinctly summarized the factual highlights and procedural history of this case:

> The owner of a fertilizer spreader truck backed it over Mrs. Jack Ogletree's husband, causing his death. Mrs. Ogletree brought this wrongful death action, alleging that Navistar International Transportation Corporation (Navistar), as manufacturer of the truck's cab and chassis, had negligently breached a duty to install an audible back-up alarm on the vehicle. At trial, the jury returned a verdict in favor of Mrs. Ogletree, but awarded damages for funeral and medical expenses only. Mrs. Ogletree made a motion for new trial on the issue of damages, and Navistar moved for a judgment notwithstanding the verdict or, in the alternative, for a new trial. The trial court denied both motions for new trial, but granted Navistar's motion for judgment n.o.v. The case has a long appellate history: *Ogletree v. Navistar Intl. Transp. Corp.*, 194 Ga. App. 41 (390 SE2d 61) (1989) (*Ogletree I*); *Navistar Intl. Transp. Corp. v. Ogletree*, 199 Ga. App. 699 (405 SE2d 884) (1991) (*Ogletree II*); *Ogletree v. Navistar Intl.*

*Transp. Corp.*, 221 Ga. App. 363 (471 SE2d 287) (1996) (*Ogletree III*); *Ogletree v. Navistar Intl. Transp. Corp.*, 227 Ga. App. 11 (488 SE2d 97) (1997) (*Ogletree IV*); *Ogletree v. Navistar Intl. Transp. Corp.*, 269 Ga. 443 (500 SE2d 570) (1998) (*Ogletree V*); *Ogletree v. Navistar Intl. Transp. Corp.*, 236 Ga. App. 89 (511 SE2d 204) (1999) (*Ogletree VI*). In *Ogletree IV*, the Court of Appeals applied the "open and obvious danger" rule and affirmed the trial court's grant of Navistar's motion for judgment n.o.v. On certiorari in *Ogletree V*, this Court held that the open and obvious danger rule was no longer viable in design defect cases, in light of our adoption of the risk-utility analysis in *Banks v. ICI Americas*, 264 Ga. 732 (450 SE2d 671) (1994). On remand, the Court of Appeals again affirmed the judgment n.o.v. in favor of Navistar, on the grounds that Navistar was not negligent in failing to install a back-up alarm and that the risk of the cab and chassis without the alarm did not outweigh the usefulness of the product in that unequipped condition. *Ogletree VI*, supra at 94 (2). We granted certiorari to consider the opinion in *Ogletree VI*. Because there was some evidence that the risk outweighed the utility of the cab and chassis without the alarm, the issue of negligent design cannot be decided as a matter of law and, therefore, we reverse the judgment of the Court of Appeals.

*Ogletree v. Navistar Intl. Transp. Corp.*, 271 Ga. 644-645 (522 SE2d 647) (1999).

1. Since our Supreme Court has resolved the issue of whether the trial court erred in granting Navistar's motion for judgment n.o.v. on the issue of negligent design, we must address whether the trial court's judgment is sustainable on any other basis. As we stated before,

> the j.n.o.v. motion set forth three separate and independent grounds: (1) the law of the case rule no longer applied and thus the *Weatherby* [*v. Honda Motor Co.*, 195 Ga. App. 169 (393 SE2d 64) (1990)] ruling controlled; (2) there was no evidence that Navistar was negligent in its design and manufacture of the cab and chassis; and (3) any possible defect in the design was not a proximate cause of the damages sustained.

(Punctuation omitted.) *Ogletree VI*, 236 Ga. App. at 91 (1). We now turn to the third basis for judgment n.o.v. argued by Navistar: Whether under the circumstances of this case the plaintiffs

presented evidence from which the jury could infer that Navistar's failure to install an audible back-up alarm on Campbell's truck caused Ogletree's death.

When considering whether the trial court erred in granting Navistar's motion for judgment n.o.v.,

> we review and resolve the evidence and any doubts or ambiguities in favor of the verdict. . . . [J]udgments n.o.v. are not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a certain verdict. Thus, a judgment n.o.v. may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. If the evidence is conflicting, or if insufficient evidence exists to make a "one-way" verdict proper, judgment n.o.v. should not be granted. Further, when considering these motions, trial and appellate courts must view the evidence in the light most favorable to the party securing the jury verdict.

(Citation and punctuation omitted.) *Jakobsen v. Colonial Pipeline Co.*, 237 Ga. App. 441, 442 (1) (514 SE2d 851) (1999).

As a general rule, issues of causation are for the jury to resolve and should not be determined by a trial court as a matter of law except in plain and undisputed cases. *Flanagan v. Riverside Military Academy*, 218 Ga. App. 123, 124-125 (460 SE2d 824) (1995). When reviewing whether the trial court erred in granting a motion for judgment n.o.v. on the issue of causation, we must be guided by these principles: "Negligence is not to be presumed, but is a matter for affirmative proof." (Punctuation omitted.) *Cagle v. Ameagle Contractors,* 209 Ga. App. 712 (434 SE2d 546) (1993). "To recover damages in a tort action, a plaintiff must prove that the defendant's negligence was both the 'cause in fact' and the 'proximate cause' of [the] injury." *Atlanta Obstetrics &c. Group v. Coleman*, 260 Ga. 569 (398 SE2d 16) (1990); *Talley v. City Tank Corp.*, 158 Ga. App. 130, 134 (3) (279 SE2d 264) (1981). With respect to factual causation (often referred to as the causal "link" or "connection" between an act or omission and an event), we have held that " '[t]he defendant's conduct is not a cause of the event, if the event would have occurred without it.' Prosser, Law of Torts (4th ed. 1971), 239." *Gen. Motors Corp. v. Davis*, 141 Ga. App. 495, 496 (1) (233 SE2d 825) (1977). Although we view the evidence and any inferences which logically flow from the evidence in the light most favorable to Ogletree on the issue of causation, a reasonable inference sufficient to create a triable issue of fact cannot be based on mere possibility, conjecture, or speculation. *Pafford v. Biomet*, 264

Ga. 540, 544 (448 SE2d 347) (1994); *Greene v. Jenkins*, 224 Ga. App. 640, 644 (2) (481 SE2d 617) (1997). Consequently,

> [t]he plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. . . . [W]hen a jury renders a verdict that is not supported by the evidence, but is based solely on conjecture, it becomes the duty of the court to issue a judgment n.o.v.

(Citation omitted.) *Jakobsen v. Colonial Pipeline Co.*, 237 Ga. App. at 444-445 (1).

Viewed in the light most favorable to Ogletree, the record reveals the following evidence on the issue of causation: Richard Ogletree died as a result of injuries he sustained when his friend Frank Campbell accidentally backed his fertilizer spreader truck into him, crushing him between the truck and a dry fertilizer storage bin called a "Killebrew." The evidence is disputed regarding whether Ogletree knew Campbell was backing up and whether, under the circumstances, he would have heard a back-up alarm had one been installed and operational. Consequently, we cannot say that the presence of a functioning back-up alarm, under these circumstances, would not, as a matter of law, have prevented the accident. The trial court's grant of judgment n.o.v. was nonetheless correct, however, if the undisputed evidence established that even if Navistar had installed the back-up alarm, the alarm, through no fault of Navistar's, would not have been present and operational on the date of the accident. See *Gen. Motors Corp. v. Davis*, 141 Ga. App. at 496 (1).

The following additional evidence is relevant to this inquiry: The truck involved in the accident was a 1978 Navistar medium-duty Loadstar 1700 incomplete cab and chassis with an 18-foot wheelbase and extra-long rear frame rail extensions. When the truck was manufactured, Navistar, like every other manufacturer of similar medium-duty trucks, offered a back-up alarm as a factory-installed option. The evidence was undisputed that Navistar was not required by any federal, state, or local law or industry standard to install as standard equipment alarms on the incomplete truck cab and chassis involved in this accident. If a back-up alarm had been installed, it is undisputed that Navistar would have installed it on the rear cross-member of the frame rail and wired it into the back-up lamp circuitry at the back end of the vehicle.

Penske Leasing bought the truck from Navistar in 1978 as part of a fleet of 11 identical cabs and chassis with the intention of fitting it with a 22-foot-long moving van body. Penske did not request the optional back-up alarm. There is no evidence that Penske was

required by any local, state, or federal law or industry standard to operate the truck with an audible back-up alarm or to maintain such a device if it had been installed by Navistar. Penske modified the incomplete chassis, fitted it with a van body, used it for four years as a moving van, and put about 67,000 miles on it. The plaintiffs presented no evidence from Penske regarding its use and maintenance of the truck. Penske eventually sold the truck to McDonald Chevrolet, a retail car and truck dealership in Cornelia. The dealer removed the van body from the cab and chassis prior to reselling it. In August 1982, Campbell bought the used cab and chassis from the dealership.

Campbell took the cab and chassis to Bagwell Brothers in Royston to be modified to accommodate a fertilizer spreader body. Although it was foreseeable that Navistar's trucks would be modified by their immediate purchasers to accommodate a variety of uses, it was undisputed that Campbell's modifications were atypical. Navistar's Products Integrity Group Manager testified that Bagwell Brothers significantly modified the chassis and "drastically altered" the truck's wheelbase. Almost ten feet of frame rail up to and including where the rear axle was mounted was removed and the wheelbase was shortened by over five feet, a modification described as "extreme" and "very unusual." Typically, someone wishing to use a Navistar cab and chassis for a fertilizer spreader would purchase one with a short wheelbase and short frame rails. Campbell's modifications resulted in the rear cross-members of the frame rail being completely cut off. Campbell had to replace the drive shaft and move the muffler and fuel tanks to accommodate the fact that the fertilizer spreader truck was agricultural equipment customarily driven in crop fields. After the chassis was modified, Campbell took it to Newton Crouch Company in Griffin, where the fertilizer spreader body Campbell had bought in 1977 was installed and "refabbed." The truck's rear signal lamps were removed, rewired, and reconnected at the top of the fertilizer spreader body; the wiring was not Navistar's original wiring; and the rear back-up lamps were not moved and were left disconnected.

Ogletree's and Navistar's experts agree that the modifications Campbell did would have resulted in the disconnection and removal of the back-up alarm. Moreover, Ogletree's expert admitted there exists generally a potential that a back-up alarm would be removed and discarded. Although Ogletree's expert opined that the alarm, had it been installed, would have been reconnected, he cited no factual basis — either from witness testimony, his personal experience, or any empirical study — in support of that opinion. Instead, he suggested that if Navistar had put warnings on the alarm instructing all purchasers and subsequent users of the truck to maintain, repair, or

reconnect the alarm if necessary, it "may have been reused" by someone. Navistar, on the other hand, presented substantial evidence demonstrating that Campbell would not have reinstalled the alarm after Bagwell Brothers removed it.

Indeed, every lay and expert witness who testified on the subject admitted that he had *never* seen a fertilizer spreader truck with a back-up alarm. No federal, state, or local law or industry standard requires that agricultural equipment, including a fertilizer spreader truck, be operated with an audible back-up alarm. Fertilizer spreader trucks are only infrequently operated in reverse because the fertilizer spreader operates only when the truck is going forward. Fertilizer spreader trucks are rarely operated on the street because the Killebrews are usually brought to the farmers' fields. Very few people work around fertilizer spreaders. Typically, the only person near a fertilizer spreader truck while it is being used in the field is the driver.

When Newton Crouch rewired Campbell's signal lamps at the top of the fertilizer spreader body, they did not move and reconnect the back-up lamps, the circuitry through which the alarm would have operated. Campbell has never requested that a manufacturer install a back-up alarm on any of his farm equipment. Campbell has never added a back-up alarm to his existing equipment, even though alarms are relatively inexpensive, easy to obtain, and simple to install. When Campbell bought another truck in 1992 to be used as a fertilizer spreader, he did not equip it with a back-up alarm.

As we stated above, the plaintiffs had the burden of proving the causal connection between Navistar's alleged design defect and Ogletree's injury. Plaintiffs' expert's opinion that Ogletree's injury was attributable to Navistar's alleged design defect is specifically premised on an assumption that the alarm would have survived Campbell's modifications. Therefore, it was incumbent upon the plaintiffs to present some competent evidence from which the jury could reasonably infer that the alarm would have been retained and reinstalled by Campbell. Ogletree's expert's opinion testimony on that point, however, was founded solely upon the unsupported premise that a factory-installed alarm would tend to remain with the truck, or, in other words, that people generally tend to keep what they have been given. Such opinion testimony, at best, only gives rise to an inference that someone *might have* kept the alarm. However, because that inference is founded on speculation, it is without evidentiary value. See *Grant v. Ga. Pacific Corp.*, 239 Ga. App. 748, 751 (2) (a) (521 SE2d 868) (1999). As we have held, "[n]o inference of fact may be drawn from a premise which is wholly uncertain." (Citation and punctuation omitted.) *Gwinnett Property v. G+H Montage GmbH*, 215 Ga. App. 889, 892 (1) (453 SE2d 52) (1994). And, inferences must

be based on probabilities rather than mere possibilities. *Cohen v. Hartlage*, 179 Ga. App. 847, 851 (348 SE2d 331) (1986). Moreover, when a party relies on inferences to prove a point, not only must those inferences be factually based, they must tend in some proximate degree to establish the conclusion sought and render less probable all inconsistent conclusions. *Page v. Atlanta Center Ltd.*, 219 Ga. App. 422, 424 (465 SE2d 456) (1995); see also *Allen Kane's Major Dodge v. Barnes*, 243 Ga. 776, 780-781 (257 SE2d 186) (1979). In this case, the inference that someone *might have* kept a factory-installed back-up alarm does not tend to prove that Campbell *would have* kept it under these circumstances, nor does it render less probable the inconsistent inference that Campbell would have discarded the alarm because he did not want it and was not required to keep it. Thus, the jury could not find that but for Navistar's failure to install an alarm, Ogletree's death would have been prevented because there was no competent evidence supporting a reasonable inference that the alarm would have been present and operational on the day of the accident.

Moreover, because the unrebutted evidence establishes that Campbell's unforeseeable modifications would have resulted in Navistar's alarm being removed, and there is no competent evidence establishing that an alarm would have been reconnected, Campbell's actions would constitute an intervening and efficient cause explaining the absence of a back-up alarm. As we have held,

> Where the evidence plainly and manifestly shows that the injury was caused by the intervening efficient act of a third person, the defendant cannot be held responsible for having produced the injury, and the question is then one of law for determination by the court, and not one of fact for the jury.

(Citation and punctuation omitted.) *Bonard v. Lowe's Home Centers*, 224 Ga. App. 85, 87 (2) (479 SE2d 784) (1996). Under these circumstances, Navistar's failure to install an alarm as standard equipment in all its trucks was too remote a factor to constitute a proximate or legal cause of Ogletree's death. See, e.g., *Talley v. City Tank Corp.*, 158 Ga. App. at 134-135 (3) ("[I]f the design of that product has been independently altered, eliminated and replaced by a third party after the sale and injuries then result, those injuries cannot be traced to or be the proximate result of the manufacturer's original design which did not exist at the time of injury."); *McNeely v. Harrison*, 138 Ga. App. 310, 313 (226 SE2d 112) (1976) ("The circumvention of the safety device, designed to prevent the type of injury which occurred, constitutes an unforeseeable intervening act sufficient to relieve [appellees] of negligence liability.").

For these reasons, the evidence adduced was insufficient as a

matter of law to establish the requisite factual and proximate causal connection between Navistar's failure to install a back-up alarm and the accident that resulted in Ogletree's death. Consequently, we conclude that the trial court properly granted Navistar's motion for judgment n.o.v.

2. Our holding in Division 1 renders all remaining enumerations of error moot.

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED JUNE 9, 2000 —<br>RECONSIDERATION DENIED JULY 11, 2000

*Winburn, Lewis & Barrow, Gene Mac Winburn, John J. Barrow, Gambrell & Stolz, Irwin W. Stolz, Jr., Seaton D. Purdom*, for appellants.

*Nelson, Mullins, Riley & Scarborough, Richard B. North, Jr., Tara R. Simkins*, for appellee.