## A00A1662. MANESH et al. v. BAKER EQUIPMENT ENGINEERING COMPANY.
### (543 SE2d 61)

ELLINGTON, Judge.

Mehdi I. Manesh and his wife, Marsha L. Manesh, appeal from the grant of summary judgment to Baker Equipment Engineering Company in his suit for recovery for personal injury and her derivative suit for loss of consortium.[1] We find that Baker Equipment failed to meet its burden to establish that no jury issue exists regarding its liability. Therefore, it was not entitled to summary judgment, and we reverse.

To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's

---

[43] See, e.g., *Edwards v. Dept. of Children &c. Svcs.*, 271 Ga. 890 (525 SE2d 83) (2000).
[1] The trial court also granted summary judgment in favor of co-defendant Wilkie Manufacturing, Inc., but Manesh dismissed his appeal of that judgment.

> case. . . . A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case.

(Emphasis in original.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). On a grant of summary judgment, this Court conducts a de novo review of the record. *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

In this case, Manesh presented evidence to support his claim that Baker Equipment negligently failed to properly tighten critical bolts on an aerial ladder and that this failure was responsible for an industrial accident that crushed his foot. If Baker Equipment had presented evidence of an alternative cause of the accident that was at least as likely as that presented by Manesh, it would have been the duty of the trial court to grant Baker Equipment's motion for summary judgment. See *Avery v. Cleveland Ave. Motel*, 239 Ga. App. 644, 645 (1) (521 SE2d 668) (1999). Baker Equipment, however, failed to present any evidence of alternative causation. Therefore, under these circumstances, the trial court erred in granting summary judgment.

The accident happened when the ladder suddenly retracted while Manesh and a co-worker were repairing a sign in February 1997. The truck-mounted, aerial ladder had three sections that "telescoped" out to raise workers 54 feet off the ground. The sections are operated by cables that are secured by a device called a "sandwich cable grip," which are held together by six to eight bolts. According to the manufacturer: "The top section of [this model of ladder] can retract or 'collapse' only in three ways: a. If the operator pushes, or 'actuates' the operation switch to retract the ladder; b. If the top cable breaks; or c. If the top cable slips in the sandwich cable grip."[2] Further, based upon the manufacturer's history with the ladder, after the bolts are tightened and torqued according to specifications,[3] the bolts will remain torqued "forever" and will not become loose during normal usage of the ladder. In fact, the manufacturer's initial product tests revealed that, when it is properly tightened, maintained, and inspected, the sandwich cable grip "exceeded the

---

[2] There is no evidence that the operator retracted the ladder in this case, and the evidence affirmatively showed that the cable did not break.

[3] The manufacturer's written specifications required that the bolts be "torqued equally" to a specified pressure and included the following notation: "Cable will squish, keep tightening bolts until they are tight as per torque specifications."

strength of the actual cable it was holding" and was "sufficient to prevent unintended retraction." It was undisputed that there has never been a report of a "sudden uncontrolled retraction" of this type of ladder or the failure of the sandwich cable grip.

The record shows that Baker Equipment replaced the extension cables on the ladder in September 1995. In December 1995, Baker Equipment disconnected the extension cables in order to remove the extension cylinder. To replace the extension cables, one has to first loosen the bolts holding the sandwich cable grip in place. A former employee of Baker Equipment, Matthew Bellew, gave an affidavit in which he admitted the following: he replaced the extension cylinder on the Wilkie Manufacturing ladder in December 1995, even though he had no training as a mechanic prior to his two weeks of employment with Baker Equipment; he referred to the Wilkie service manual as he was working on the ladder; in the process of replacing the cylinder, he disconnected both sandwich cable grips; he probably tightened the bolts only with an air wrench initially, before checking the ladder timing; he "probably did not torque the cable sandwich grip bolts after retentioning the ladder's extension cables" or at the end of the repair work; and he would have specifically mentioned in his service order notes if he had torqued the sandwich cable grip bolts. Bellew did not record in his service order notes that he torqued the sandwich cable grip bolts after adjusting the cable tension and testing the ladder. In its statement of undisputed facts, Baker Equipment admitted that Bellew was the last of its employees to work on the ladder and that Bellew did not remember whether he retorqued the sandwich grip bolts when he finished working on the ladder.

The day after Manesh's February 1997 accident, Manesh's coworker discovered that the cable grip's bolts were loose and "you could see the marks on the cable where it had slipped." Fellow employees were able to "physically slide the ladder up the [cable] grip."

Manesh presented the testimony of two experts, who agreed that the ladder would not have accidentally retracted but for the failure to properly torque the sandwich cable grip bolts.[4] Although one of the experts deposed that there could be other possible reasons for the bolts to become loose, such as extreme vibration or faulty repair by another, Baker Equipment failed to present any evidence to show that these alternate causes actually occurred in this case.

Further, Manesh's experts agreed that the sandwich cable grip — with properly torqued bolts — would have supported several times

---

[4] One expert emphasized that the failure to maintain a safety catch on the middle portion of the ladder did not contribute to Manesh's accident.

the weight of the two workers plus their equipment. One expert opined that the cable grip did not fail during the thirteen-month interval between Baker Equipment's December 1995 repair and the February 1997 accident because the sign company employees may not have placed as much weight on the ladder before. Manesh's co-worker, who worked for the sign company during that period, deposed that he had never worked with another person on the ladder while it was fully extended and elevated. Baker Equipment presented no evidence that the allowable weight limit had been exceeded prior to the time of Manesh's accident.

1. Manesh contends that the trial court erred in finding that the deposition testimony of Bellew and the expert witnesses was not probative because it was "speculative" and inadmissible opinion evidence.

(a) Initially, we note that Bellew's deposition was never filed in the record and was not considered herein. However, the record contained Bellew's affidavit, which contained his personal recollection of his maintenance of the ladder. To the extent that the affidavit was based on his personal knowledge, it was admissible. OCGA § 9-11-56 (e); *Vickers v. Chrysler Credit Corp.*, 158 Ga. App. 434, 440 (4) (280 SE2d 842) (1981) (trial court may consider admissible portions of affidavits while disregarding inadmissible portions). Bellew's statement that he *probably* did not torque the sandwich cable grip bolts because he failed to record it in his service order notes was not mere speculation, but was sufficient for the jury to draw an inference of fact on the issue of Baker Equipment's negligence. See *Ogletree v. Navistar Intl. Transp. Corp.*, 245 Ga. App. 1, 6-7 (1) (535 SE2d 545) (2000).

(b) Further, the expert opinion evidence was well within their level of expertise.

> The requirements for qualification as an expert witness are minimal; generally, nothing more is required to qualify an expert than evidence that the person has been educated in a particular trade, science, or profession. Formal education or training in an area of expertise is not necessary, provided the witness possesses the qualifications of such area of expertise through skill and experience. It is the possession of special knowledge derived either from experience, study, or both in a field of expertise that makes one an "expert." Thus, an expert witness can express an opinion on a matter which comes within the person's qualifications.

(Citations omitted.) *Dayoub v. Yates-Astro Termite Pest Control Co.*, 239 Ga. App. 578, 580 (1) (521 SE2d 600) (1999). Having reviewed

the record, we find that both experts possessed the requisite experience to give their opinions regarding the cause of the ladder's sudden retraction. Further, both witnesses gave the factual bases for these opinions. See OCGA § 24-9-67. As such, a jury issue existed as to whether the failure to properly torque the bolts caused Manesh's injuries. The trial court erred in granting Baker Equipment's motion for summary judgment.

2. Manesh contends that the trial court erred in granting summary judgment on the basis of the "acceptance doctrine." Under this doctrine,

> [a]n independent contractor is not liable for injuries to a third person, occurring after the contractor has completed the work and turned it over to the owner or employer and the same has been accepted by him, though the injury result[ed] from the contractor's failure to properly carry out his contract.

*Young v. Smith & Kelly Co.*, 124 Ga. 475 (52 SE 765) (1905). Georgia's courts subsequently adopted an exception to this rule, as follows: when a contractor is negligent, and that negligence is inherently or intrinsically dangerous, a nuisance per se, or imminently dangerous to a third party, acceptance of the work does not bar a suit for injuries by the third party. *David Allen Co. v. Benton*, 260 Ga. 557, 558 (398 SE2d 191) (1990).

In this case, Manesh presented evidence that, because the ladder reaches heights exceeding 50 feet off the ground, the failure to properly torque the sandwich cable grip bolts could result in serious bodily injury or death due to the sudden retraction of the ladder. Since Manesh presented evidence from which the jury could infer Baker Equipment's negligence and the inherently dangerous nature of such negligence, summary judgment was not appropriate under the acceptance doctrine.

*Judgment reversed. Andrews, P. J., and Ruffin, J., concur.*

DECIDED NOVEMBER 28, 2000 —
RECONSIDERATION DENIED DECEMBER 15, 2000 — 

*Dietrick, Evans, Schols & Williams, Paul A. Dietrick, William P. Evans*, for appellants.

*Goldner, Sommers, Scrudder & Bass, Benjamin D. Ladner, Aaron J. Aberson, Owen, Gleaton, Egan, Jones & Sweeney, Philippa V. Tibbs*, for appellee.